CHARLES C. REIFF AND MILDRED H. REIFF, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 15778–79.    Filed November 30, 1981.

Charles C. Reiff and Mildred H. Reiff, pro se.
*Howard Philip Newman*, for the respondent.

CHABOT, *Judge*: Respondent determined a deficiency in Federal individual income tax against petitioners for 1977 in the amount of $740. In his answer, respondent asserts under section 6214(a)[1] that the deficiency in income tax should be increased by $1,471 (for a total of $2,211) and that additions to tax should be imposed under sections 6651(a)(1) (failure to file return) and 6653(a) (negligence) in the amounts of $274.75 and $110.55, respectively.[2]

The issues for decision are:

---

[1]Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 as in effect for the taxable year in issue.

[2]Since respondent asserts that no return was filed by petitioners, respondent asserts a deficiency in the full amount of the asserted income tax liability (sec. 6211) and computes the addition to tax under sec. 6653(a) based on that amount (sec. 6653(c)). Respondent implicitly concedes that, for purposes of the sec. 6651(a) addition to tax, petitioners are entitled to take into account the $1,112.23 income tax withholding shown on petitioner-husband's Form W–2 (sec. 6651(b)). Respondent apparently has not taken into account for this purpose the 1977 estimated tax payment of $316.42 shown on petitioner's Form 1040.

(1) Whether petitioners are liable for an income tax deficiency;

(2) Whether petitioners are liable for an addition to tax under section 6651(a)(1); and

(3) Whether petitioners are liable for an addition to tax under section 6653(a).

FINDINGS OF FACT

Some of the facts have been stipulated or deemed stipulated[3] under Rule 91(f)(3);[4] the stipulations and the stipulated exhibits are incorporated herein by this reference.

When the petition in this case was filed, petitioners Charles C. Reiff (hereinafter sometimes referred to as Charles) and Mildred H. Reiff (hereinafter sometimes referred to as Mildred), husband and wife, resided in Glenside, Pa.

During 1977, Charles was employed by Hale Fire Pump Co. (hereinafter referred to as Hale). Hale paid wages to Charles in 1977 in the amount of $9,874. In addition to the wages paid by Hale, Charles received a distribution of $784 in 1977 under Hale's tax-qualified profit-sharing plan. Contributions under Hale's profit-sharing plan were made only by Hale; no contributions were made by Charles. As of the end of 1976, the balance in Charles' account in this plan was $5,741.97; as of the end of 1977, it was $4,822.99.

Dividends and interest paid to petitioners in 1977 with respect to jointly owned stocks and bonds and with respect to Charles' savings accounts, Mildred's savings accounts, and

---

[3]By order dated Apr. 6, 1981, we granted respondent's motion to compel stipulation and directed petitioners to file a response to respondent's proposed stipulations and show cause why the facts and evidence recited in such proposed stipulations should not be accepted as established for purposes of this case. Petitioners claimed that the Fourth and Fifth Amendments to the Constitution of the United States protected them from having to respond to pars. 6 through 34 of respondent's initial proposed stipulation and pars. 6 through 15 of respondent's revised proposed stipulation. Petitioners agreed to stipulate to pars. 1 through 5 of respondent's proposed stipulation. Two hearings were held on our show-cause order. We ruled that no rights of petitioners under the Fourth or Fifth Amendments would be violated by deeming pars. 6 through 15 of respondent's revised proposed stipulation as established. Since petitioners gave no indication that they disputed the truth of such pars. 6 through 15, we ordered that these paragraphs be deemed stipulated for purposes of this case.

[4]Unless indicated otherwise, all Rule references are to the Tax Court Rules of Practice and Procedure.

Mildred's interest-bearing account at an insurance company are shown in table I.

TABLE I

|  | Dividends | Interest |
|---|---|---|
| Colonial Option Income Fund (joint) | $1,005 |  |
| Corporate Securities Trust (joint) | 1,103 |  |
| Philadelphia Electric Co. (joint) | 1,720 |  |
| Pennsylvania Power & Light (joint) |  | $975 |
| Commonwealth Federal Savings (Charles) |  | 363 |
| Philadelphia National Bank (Charles) |  | 16 |
| Pennsylvania Savings Fund Society (Charles) |  | 352 |
| Pennsylvania Savings Fund Society (Charles) |  | 615 |
| Home Life Insurance Co. (Mildred) |  | 22 |
| Pennsylvania Savings Fund Society (Mildred) |  | 352 |
| Pennsylvania Savings Fund Society (Mildred) |  | 261 |
| Totals | 3,828 | 2,956 |

For 1977, petitioners filed with respondent a 32-page pre-printed document entitled "Petition for Redress of Grievances."[5] The first and second pages of the document consist of a modified 1976 Form 1040 with various constitutional objections printed in the margins. The first page was signed by petitioners under penalties of perjury and is dated April 17, 1978; it shows petitioners' names, address, and social security numbers, Charles' occupation, Federal income tax withheld in the amount of $1,112.23, 1977 estimated tax payments in the amount of $316.42, and total payments, amount overpaid, and amount to be refunded—all in the amount of $1,428.65. No information is provided with respect to petitioners' filing status or exemptions. The remaining lines on the Form 1040 contain one or two preprinted asterisks which are explained in the margin as objections under the 1st, 4th, 5th, 7th, 8th, 9th, 10th, 13th, 14th, and 16th Amendments. The remaining pages of the document consist of numerous statements and affidavits, a copy of the Declaration of Independence, and excerpts from the United States Constitution and various publications. Charles signed the first three of the preprinted pages after the Form 1040. The first signed page is a form letter to the Director of the Internal Revenue Service Center, which states:

We * * * [offer] to re-file, or to amend our return, if you will please show

---

[5]On brief, petitioners refer to this document as a "W. Vaughn Ellsworth packet."

us how to do so without forcing us to waive our Constitutional Rights, and to receive your written guarantee against any criminal prosecution—both federal, state and local—as the result of furnishing you the information you seek.

The second signed page is an "Affidavit of My Understanding of a United States 'Dollar.'" The third signed page is an affidavit about Charles' understanding as to a conviction of one W. Vaughn Ellsworth and as to Charles' rights under the Fifth Amendment.

Attached to the document is Charles' Form W–2 from Hale with handwritten notations that the dollar amounts shown thereon are Federal Reserve Notes.

Charles intended to file a "Fifth Amendment return" for 1977. Although Charles did not agree with all of the objections raised in the 32-page document petitioners filed with respondent for 1977, Charles was told in a class conducted by a group (whose name at the date of the trial was the Committee for Constitutional Taxation) that this was the way to file the return he desired. Charles became interested in Fifth Amendment returns as a result of some magazine articles he had read, and he first attended the classes of the Committee for Constitutional Taxation on the filing of such returns in January 1978. As of the date of trial, Charles was active in that group, and, in the course of such activities, had studied the tax laws to some degree.

Petitioners received a Form 3949—Intelligence Information Item—for 1977 from respondent by virtue of a request by petitioners under the Privacy Act and the Freedom of Information Act. Attached to that form was a printed sheet entitled "Illegal Tax Protester Initial Analysis Data Sheet" which contains the following notation: "T/P refused to totally fill out 1040, claiming 5th amendment, etc.; but did attach W–2, so it is processable."

Petitioners failed to file an income tax return for 1977. This failure was deliberate and in open disregard of petitioners' obligations under the internal revenue laws; it was due to willful neglect and not due to reasonable cause.

Petitioners underpaid their income tax for 1977; a part of this underpayment was due to negligence or intentional disregard of respondent's rules or regulations.

## OPINION

As a preliminary matter, we note that respondent's determinations as to matters of fact in the notice of deficiency are presumed to be correct, and petitioners have the burden of proving otherwise. *Welch v. Helvering*, 290 U.S. 111 (1933); Rule 142(a). However, respondent has the burden of proof with respect to the additional income tax deficiency and the additions to tax which were asserted in his answer.

### I. Deficiency in Income Tax

Petitioners do not dispute that they received the wages, dividends, interest, and distribution from Hale's profit-sharing plan described in the findings of fact, *supra*, but maintain that the receipt of these items is not proof of any tax liability. In particular, they assert that "wages are not 'income' subject to tax." Notwithstanding the notations on Charles' Form W–2 and Charles' signature on the "Affidavit of My Understanding of a United States Dollar," petitioners now eschew any argument based on the meaning of "dollar." Respondent asserts that petitioners are required to include in gross income their wages, dividends, and interest under section 61(a), and the distribution from Hale's profit-sharing plan under sections 402(a)(1) and 72(a).

We agree with respondent.

Under section 61(a),[6] petitioners are required to include in gross income for 1977 the wages,[7] dividends, and interest they received in that year.

Although petitioners refused to acknowledge receipt of dividends and interest, neither did they deny such receipt.

---

[6]SEC. 61. GROSS INCOME DEFINED.

(a) GENERAL DEFINITION.—Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:

    (1) Compensation for services, including fees, commissions, and similar items;

    \*        \*        \*        \*        \*        \*        \*

    (4) Interest;

    \*        \*        \*        \*        \*        \*        \*

    (7) Dividends;

[7]It is well established that compensation for services, in whatever form received, is includable in gross income. *Commissioner v. Duberstein*, 363 U.S. 278 (1960); *Old Colony Trust Co. v. Commissioner*, 279 U.S. 716 (1929).

Also, they did not deny that appropriate officials of the asserted payor corporations would testify that petitioners were paid dividends and interest in the amounts set forth in table I *supra*. Petitioners' only stated reason for refusing to stipulate as to such payments was their fear of self-incrimination. On several occasions during the proceedings in the instant case, respondent's attorney represented to the Court that there is no proposed or pending criminal tax investigation or proceeding against petitioners for any taxable year. The privilege against self-incrimination may be invoked only when an answer to the question posed would expose the petitioner to a real danger of prosecution; remote or speculative possibilities of prosecution for unspecified crimes are not sufficient to justify a failure to respond. E.g., *McCoy v. Commissioner*, 76 T.C. 1027, 1029 (1981), on appeal (9th Cir., Sept. 15, 1981), and cases cited therein. See note 3 *supra*. Petitioners received dividends[8] and interest income in the amounts set forth in table 1 *supra*; such amounts are taxable to petitioners as ordinary income.

Charles received $784 as a distribution under Hale's tax-qualified profit-sharing plan. Under section 402(a)(1),[9] the amount so distributed is taxable to him under section 72 in the year so distributed or made available. Section 72(a)[10] provides the general rule that the amount so distributed is includable in gross income. Charles made no contributions under the plan, and there is no indication that any part of the distribution is a return of amounts treatable as contributions by

---

[8]The dividend income is subject to the exclusion provided by sec. 116(a), which apparently was taken into account by respondent in his assertion of an increased deficiency and additions to tax.

[9]SEC. 402. TAXABILITY OF BENEFICIARY OF EMPLOYEES' TRUST.

(a) TAXABILITY OF BENEFICIARY OF EXEMPT TRUST.—

(1) GENERAL RULE.—Except as provided in paragraphs (2) and (4), the amount actually distributed or made available to any distributee by an employees' trust described in section 401(a) which is exempt from tax under section 501(a) shall be taxable to him, in the year in which so distributed or made available, under section 72 (relating to annuities).
* * *

The subsequent amendments of this provision by secs. 311(c)(1) and 314(c)(1) of the Economic Recovery Act of 1981, Pub. L. 97–34, 95 Stat. 172, at 280, 286, respectively, do not affect the instant case.

[10]SEC. 72. ANNUITIES; CERTAIN PROCEEDS OF ENDOWMENT AND LIFE INSURANCE CONTRACTS.

(a) GENERAL RULES FOR ANNUITIES.—Except as otherwise provided in this chapter, gross income includes any amount received as an annuity (whether for a period certain or during one or more lives) under an annuity, endowment, or life insurance contract.

Charles. The distribution was not eligible for special tax treatment as a lump-sum distribution since it was less than the balance to Charles' credit in the plan. (Sec. 402(e)(4)(A).) Accordingly, the full $784 is taxable to petitioners as ordinary income.

Petitioners point out that there is a difference between income and tax liability. They assert that, even though respondent may have shown they had income, he has not shown they have a tax liability. Petitioners misunderstand the effect of the burden of proof.

In the notice of deficiency, respondent determined that petitioners were entitled to two dependency exemptions and did not allow any itemized deductions in excess of the zero bracket amount. It is up to petitioners to show that they are entitled to deductions, exclusions (see note 8 *supra*), or credits[11] that would reduce or eliminate their tax liability. This, they failed to do. When respondent showed that petitioners had income in addition to that determined in the notice of deficiency (which petitioners on brief point out they never denied), it was up to petitioners to show that this additional income should not increase their tax liability. This, too, they failed to do.

We conclude that respondent has borne his burden of proof with regard to the increased deficiency.

On their Form 1040, petitioners left blank the lines relating to personal exemptions; as to deductions and exclusions, they indicated their objections on constitutional grounds. In their answering brief, petitioners assert, for the first time, that they are entitled to (1) a third personal exemption because of Mildred's legal blindness, and (2) "those deductions, allowances, losses on investments or write-offs in business ventures petitioners could rightfully claim to negate any so-called 'tax liability.' " Since petitioners did not present any evidence on these points at the trial, and since mere statements on brief do not constitute evidence (*Evans v. Commissioner*, 48 T.C. 704, 709 (1967); Rule 143(b)), we conclude that petitioners have not established that they are entitled to reduce their taxable

---

[11]Petitioners are, of course, entitled to the appropriate amount of general tax credit (sec. 42), which apparently was taken into account by respondent in his assertion of an increased deficiency and additions to tax.

income by an additional personal exemption or by any of the unspecified deductions, allowances, or losses.

We conclude that petitioners have failed to bear their burden of proof.

On this issue, we hold for respondent.

## II. Section 6651(a)(1) Addition to Tax

Respondent contends that (1) petitioners were required by law to file an income tax return for 1977, (2) the 32-page document filed by petitioners for 1977 did not contain sufficient information to constitute an income tax return,[12] and (3) petitioners' failure to file an income tax return for 1977 was not due to reasonable cause, but, instead, was due to willful neglect.

Petitioners do not dispute respondent's first point. Petitioners claim that the 32-page document constitutes an income tax return for 1977, because the Form 1040 part of the document had "some information written thereon and a W–2 form attached," and because "invocation of the Fifth Amendment on a tax return is proper." Therefore, petitioners assert, they are not liable for an addition to tax under section 6651(a)(1).

We agree with respondent.

An addition to tax for failure to file an income tax return when due is imposed under section 6651(a)(1)[13] unless it is shown that such failure is due to reasonable cause and not due to willful neglect. We have already determined that petitioners received more than $17,000 of gross income during 1977. Under these circumstances, petitioners are clearly required to file an income tax return for that year (sec. 6012(a)(1)(A)).

Accordingly, we proceed to determine whether the filing of

---

[12]Respondent concedes that, if the 32-page document filed by petitioners with respondent for 1977 constitutes an income tax return for purposes of sec. 6651(a), then the return was filed timely.

[13]SEC. 6651. FAILURE TO FILE TAX RETURN OR TO PAY TAX.

(a) ADDITION TO THE TAX.—In case of failure—

(1) to file any return required under authority of subchapter A of chapter 61 * * * on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate.

the 32-page document satisfied petitioners' obligation to file an income tax return for 1977.[14]

A return need not be perfectly accurate or complete if it purports to be a return, is sworn to as such, and evinces an honest and genuine endeavor to satisfy the requirements for a return. *Zellerbach Paper Co. v. Helvering*, 293 U.S. 172, 180 (1934); *Florsheim Bros. Co. v. United States*, 280 U.S. 453, 462 (1930); *Houston v. Commissioner*, 38 T.C. 486, 491 (1962). See *United States v. Moore*, 627 F.2d 830, 834–835 (7th Cir. 1980). To qualify, however, a return must contain sufficient data from which respondent can compute and assess the liability with respect to a particular tax of a taxpayer. *Automobile Club of Michigan v. Commissioner*, 353 U.S. 180, 188 (1957); *Commissioner v. Lane-Wells Co.*, 321 U.S. 219, 222–223 (1944); *Germantown Trust Co. v. Commissioner*, 309 U.S. 304, 309 (1940); *Durovic v. Commissioner*, 487 F.2d 36, 39 (7th Cir. 1973), affg. on this issue and revg. on another issue 54 T.C. 1364, 1387–1388 (1970); *White v. Commissioner*, 72 T.C. 1126, 1129 (1979); *Hatfield v. Commissioner*, 68 T.C. 895, 898 (1977); *Cupp v. Commissioner*, 65 T.C. 68, 79 (1975), affd. without published opinion 559 F.2d 1207 (3d Cir. 1977); *Hosking v. Commissioner*, 62 T.C. 635, 639 (1974); *General Manufacturing Corp. v. Commissioner*, 44 T.C. 513, 523 (1965); *Houston v. Commissioner*, 38 T.C. at 491. The disclosure of such data must be provided in a uniform, complete, and orderly fashion. *Commissioner v. Lane-Wells Co.*, 321 U.S. at 223. But the failure of a return to reflect the computation of a tax will not, in itself, render it "no return." *Germantown Trust Co. v. Commissioner*, 309 U.S. at 310.

We believe petitioners' 32-page document fails to satisfy the foregoing criteria for several reasons.

Firstly, the document does not contain sufficient data from which respondent could compute and assess petitioners' income tax liability for 1977. The document merely discloses petitioners' names, address, social security numbers, tax withheld, and estimated tax payments. No information is

---

[14]Both sides have dealt with the status of the 32-page document as a tax return but only for purposes of the sec. 6651(a) issue presented to us. Under the circumstances, we make no determination as to possible collateral implications of our decision on this issue, and leave the parties as we find them with respect to such collateral matters. See, e.g., secs. 1(a), 1(d), 6013(d)(3).

provided regarding petitioners' filing status or exemptions. No income, deduction, credit, or tax liability amounts are shown on it; instead, the providing of such information is objected to under various constitutional provisions. As a result, a significant portion of the data necessary to compute petitioners' tax liability has been omitted. The instant case differs from *United States v. Edelson*, 604 F.2d 232 (3d Cir. 1979); *United States v. Johnson*, 577 F.2d 1304 (5th Cir. 1978); *United States v. Daly*, 481 F.2d 28 (8th Cir. 1973); *United States v. Porth*, 426 F.2d 519 (10th Cir. 1970); *Hosking v. Commissioner, supra,* in that Charles' Form W–2 was attached to the 32-page document, whereas similar information was not provided in the cited cases. We do not regard this difference as sufficient to lead to a different result. Petitioners' notations on the Form W–2, petitioners' failure to fill in the Form 1040 income lines (especially line 9—wages, salaries, tips, and other employee compensation), and the material in the 32-page document, all amount to a repudiation of the status of the Form W–2 as part of a Federal tax return. In effect, the Form W–2 was not part of a return for purposes of enabling respondent to determine petitioners' tax liability. *United States v. Rickman*, 638 F.2d 182, 184 (10th Cir. 1980). In *General Manufacturing Corp. v. Commissioner*, 44 T.C. at 522–524, we held that a purported consolidated return was a return for statute of limitations purposes even though the document did not qualify as a consolidated return. However, in that case, the purported return contained schedules disclosing "the gross income, deductions, and taxable income of [the taxpayer] in such a way that the items could be readily verified and the tax computed." 44 T.C. at 523. We conclude that, in the instant case, the Form W–2 does not enable the 32-page document to be properly treated as a return.

Secondly, petitioners' intention to file a "Fifth Amendment return" for 1977 based on a blanket Fifth Amendment claim, and petitioners' fear of the internal revenue tax system in general does not discharge petitioners from their obligation to provide respondent with sufficient data from which their income tax liability can be computed. Under settled law, the requirement that a taxpayer file tax returns in accordance with the provisions of the Internal Revenue Code and respondent's regulations violates neither the taxpayer's privilege

against self-incrimination under the Fifth Amendment nor his protection against unreasonable search and seizure under the Fourth Amendment. E.g., *White v. Commissioner,* 72 T.C. at 1130, and the cases cited therein. Based on the record herein, we conclude that petitioners have not demonstrated a reasonable basis for fearing that their tax return information would tend to incriminate them, and we further conclude that petitioners' Fifth Amendment claims do not excuse petitioners from providing the information required in an income tax return.

Thirdly, the document is far removed from an honest and genuine endeavor to satisfy the requirements for a return. It is entitled "Petition for Redress of Grievances." The various objections raised in it have been fully discussed—and consistently rejected—in numerous prior opinions of this Court and others. We again reject these objections as frivolous. Moreover, the document effectively disguises the Form W–2 information by disclaiming any tax liability whatsoever. *United States v. Rickman, supra.*

Finally, the acceptance of documents like petitioners' as a return within the meaning of the Internal Revenue Code would disrupt the administration of the tax laws and serve to undermine the integrity of our self-assessment tax system. In so holding, we adhere to the guidance of the Supreme Court (*Commissioner v. Lane-Wells Co.*, 321 U.S. at 223), as follows:

> Congress has given discretion to the Commissioner to prescribe by regulation forms of returns and has made it the duty of the taxpayer to comply. It thus implements the system of self-assessment which is so largely the basis of our American scheme of income taxation. The purpose is not alone to get tax information in some form but also to get it with such uniformity, completeness, and arrangement that the physical task of handling and verifying returns may be readily accomplished. * * *

We conclude that petitioners' 32-page document does not constitute a return within the meaning of section 6651(a)(1). In so doing, we reject petitioners' assertions that respondent considered the document a return because of a notation that it was "processable" and because petitioners had not been criminally prosecuted for failure to file an income tax return for 1977. Respondent need not formally reject petitioners' document as a return, nor seek criminal prosecution, in order to assert an addition to tax for failure to timely file a return.

Since we have found that petitioners failed to file an income tax return for 1977, we must now decide whether such failure was due to reasonable cause and not due to willful neglect.

Petitioners claim that they intended to file in good faith a "Fifth Amendment return." As we have already stated, the law is settled that petitioners' Fifth Amendment claims, based on remote or speculative possibilities of prosecution for unspecified crimes, are groundless. A good-faith belief that the filing of an income tax return would violate a taxpayer's constitutional rights does not, in and of itself, constitute reasonable cause for failure to file. *United States v. Daly*, 481 F.2d at 30; *Stevens Bros. Foundation, Inc. v. Commissioner*, 39 T.C. 93, 129–134 (1962), modified 324 F.2d 633, 646 (8th Cir. 1963); *Muste v. Commissioner*, 35 T.C. 913, 920 (1961). Under these circumstances, we find that petitioners' failure to disclose sufficient data from which their tax liability can be computed was deliberate and in open disregard of the statute and respondent's regulations. We further find that petitioners' failure to file an income tax return for 1977 was due to willful neglect and not due to reasonable cause.

As indicated in note 2 *supra*, petitioners' Form 1040 showed payments of 1977 estimated tax in the amount of $316.42. Respondent, who has the burden of proof on this issue, has failed to show that petitioners did not make estimated tax payments in that amount. Such payments reduce the base for the section 6651(a)(1) addition to tax. Sec. 6651(b)(1). This reduction is to be given effect under Rule 155.

On this issue, apart from the effect of estimated tax payments, we hold for respondent.

### III. Section 6653(a) Addition to Tax

Petitioners maintain that they did not act negligently and did not disregard rules or regulations they were bound to obey. Respondent asserts that petitioners knowingly failed to file a valid return, and so, were negligent and intentionally disregarded the rules and regulations.

We agree with respondent.

An addition to tax under section 6653(a)[15] is imposed if any part of any underpayment of tax is due to negligence or

---

[15]SEC. 6653. FAILURE TO PAY TAX.

(a) NEGLIGENCE OR INTENTIONAL DISREGARD OF RULES AND REGULATIONS WITH RESPECT TO INCOME OR GIFT TAXES.—If any part of any underpayment (as defined in subsection (c)(1)) of

intentional disregard of rules or regulations. For 1977, petitioners have an underpayment[16] equal to their deficiency in income tax (see *I. Deficiency in Income Tax, supra*).

We have already found that petitioners' failure to disclose sufficient data from which their tax liability could be computed was deliberate and in open disregard of the statute and respondent's regulations. Moreover, it is difficult to understand how petitioners could have honestly believed they owed no income tax based on the claims in their 32-page document. Cf. *Druker v. Commissioner*, 77 T.C. 867 (1981). Accordingly, we conclude that a part of petitioners' underpayment for 1977 was due to negligence or intentional disregard of rules or regulations.

On this issue, we hold for respondent.

In view of the foregoing,

*Decision will be entered under Rule 155.*

any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.

The subsequent amendments of this provision (by sec. 101(f)(8) of the Crude Oil Windfall Profit Tax Act of 1980, Pub. L. 96–223, 94 Stat. 229, 253, and by sec. 722(b)(1) of the Economic Recovery Tax Act of 1981, Pub. L. 97–34, 95 Stat. 172, 342) do not affect the instant case.

[16]SEC. 6653. FAILURE TO PAY TAX.

(c) DEFINITION OF UNDERPAYMENT.—For purposes of this section, the term "underpayment" means—

(1) INCOME, ESTATE, GIFT, AND CERTAIN EXCISE TAXES.—In the case of a tax to which section 6211 (relating to income, estate, gift, and certain excise taxes) is applicable, a deficiency as defined in that section (except that, for this purpose, the tax shown on a return referred to in section 6211(a)(1)(A) shall be taken into account only if such return was filed on or before the last day prescribed for the filing of such return, determined with regard to any extension of time for such filing) * * *