MARVIN E. JOHNSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Johnson v. Commissioner
Docket No. 9473-82.
United States Tax Court
T.C. Memo 1985-85; 1985 Tax Ct. Memo LEXIS 553; 49 T.C.M. (CCH) 824; T.C.M. (RIA) 85085; February 25, 1985. Marvin E. Johnson, pro se. Genelle F. Forsberg, for the respondent. CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION CLAPP, Judge: Respondent determined deficiencies in petitioner's Federal income tax and additions to tax as follows: Additions to Tax
Year
Deficiency
Sec. 6651(a)
Sec. 6653(a)
Sec. 6654(a)
1977
2,204.54
$551.14
$110.23
$78.44
1978
6,430.24
1,599.29
321.51
205.27
1979
7,118.33
1,773.81
355.92
298.45
*554 The issues for decision are: (1) whether petitioner had gross income for 1977, 1978, and 1979; (2) whether petitioner is liable for additions to tax under 6651(a); (3) whether petitioner is liable for additions to tax under 6653(a); and (4) whether petitioner is liable for additions to tax under section 6654(a). Prior to trial, the parties executed a stipulation of facts and a supplement thereto. At the trial the parties stipulated to additional facts and exhibits. The stipulations of facts, together with the attached exhibits, are incorporated herein by this reference. Petitioner, Marvin E. Johnson, resided in Sauk Rapids, Minnesota, when his petition was filed. Mr. Johnson did not file any federal income tax returns for the years 1977 through 1979. For 1976, petitioner filed with respondent a Form 1040A. Mr. Johnson forwarded 1040A Forms for 1977, 1978, and 1979. These documents, however, did not constitute valid federal income tax returns. Rather than supplying financial information, the spaces on the forms were completed merely with asterisks. The asterisks referred to a paragraph on a separate document which complained about providing financial information based on *555 various Constitutional objections. Respondent sent two letters to Johnson requesting conferences: one requested scheduling a conference to prepare petitioner's 1977 and 1978 returns, the other specifically requested a meeting to prepare Johnson's 1978 return. Johnson sent replies to both refusing to attend the conferences because it would be "unnecessary" and the "examination would be a waste of my (petitioner's) time and yours." Petitioner refused to provide his books and records to respondent for examination to determine petitioner's tax liability for the years in question. Respondent, therefore, was forced to utilize the bank deposits method to ascertain Johnson's income for 1977-1979. During the years in issue, Johnson was employed as a cement finisher and laborer by his father, Phillip E. Johnson. Also from July 1977 through 1979, petitioner was employed by the Department of the Army as a member of the Army Reserves. In November 1976, Johnson executed a loan application for a Veteran's Administration mortgage. He indicated that his base monthly earnings as a cement laborer were $800.00. Phillip E. Johnson, for whom the petitioner was employed, indicated in October *556 1976 in Request for Verification of Employment that petitioner was employed by him and earned a base pay of $5.00 per hour and worked 40 to 50 hours per week. Since there are three years in question and voluminous exhibits, to minimize the confusion we have dealt with each year separately. Mr. Johnson had income from wages and interest in 1977. He deposited to his account $211-9457 at the First National Bank of Wilmar a total of $7,802.94 received from Phillip E. Johnson; petitioner has stipulated to $5,407.00 of that amount being received from July 1977 through November 1977 for the performance of his labor. In the same year, the petitioner received additional income of $352.00 as a member of the Army Reserves, and $12.50 in interest income. Cash deposits totalling $1,578 were deposited into two accounts held in petitioner's name at the First National Bank. Petitioner had the following itemized deductions in 1977: Medical Expenses
$1,255.40
Taxes
172.38
Interest Expenses
1,378.08
Charitable Contributions
58.50
For the same tax year, Mr. Johnson submitted at trial many other receipts and checks written to various payees for differing amounts. In 1978, *557 petitioner received $12,502.80 from Phillip E. Johnson. The petitioner deposited $200.00 of that amount to his account #211-9457, and the remainder to account #102-8172. During the trial, petitioner admitted that the deposits made from April 10, 1978, through November 27, 1978, reflect amounts from "the sale of the petitioner's labor." From those dates in April to November, petitioner deposited a total of $6,802.80. The remaining amount of $5,700.00 deposited by petitioner into account #102-8172 was also income to petitioner from his labor. In addition to the income Mr. Johnson had from work performed for his father, he also received $1,200.12 as a member of the Army Reserves in 1978, and $3.23 in interest income. In 1978, petitioner deposited $438.67 and cash of $5.00 to account #211-9457. He also deposited $1,306.00 and cash of $55.00 to account #102-8172. From February 24, 1978, through October 14, 1978, petitioner delivered newspapers for the Minneapolis Star and Tribune. Respondent admits that after netting petitioner's expenses of his paper business against petitioner's gross profit, petitioner incurred a net loss of ($289.66) from delivering the papers. Petitioner's *558 gross income in 1978 equalled $15,221.16; petitioner had the following itemized deductions: Medical
$616.88
Taxes
153.75
Interest Expense
1,668.02
In 1979, petitioner deposited $491.00 to account #211-9457 and $10,509.25 to account #102-8172 received from Phillip E. Johnson. The $4,941.40 deposited from May 7 through November 5, 1979, had been received from Phillip E. Johnson as compensation for petitioner's performance of labor. The remaining $6,059.75 was also income received by Mr. Johnson for his labor performed. Petitioner had additional income in 1979 from the Army Reserves and interest from his savings accounts in the respective amounts of $1,174.20 and $21.85. Petitioner deposited cash of $355.00 to account #221-9457 and also $3,344.90 to that account. He also deposited $900.00 to account #102-8172. All of these amounts constituted income to petitioner in 1979. On November 10, 1979, petitioner sold his residence at 1210 S.E. Trott Avenue, Willmar. The resulting taxable gain to petitioner from the sale was $3,400.00. Petitioner did not purchase property which he occupied as a principal resident within 18 months after the sale of his home at *559 1210 S.E. Trott Avenue. Petitioner's gross income in 1979 was $20,197.10. He had the following itemized deductions: Medical
$1,026.62
Taxes
258.56
Interest Expense
2,050.96
During the years in question (1977-1979), petitioner was married to Younga Johnson. In 1977, the Johnsons had two minor children, Marvin and Bruce. In 1978, a third son, Thomas, was born. Petitioner's spouse did not elect to file a joint return with petitioner. Petitioner failed to file Federal income tax returns for 1977, 1978, and 1979. His failure was not due to reasonable cause, but was due to willful neglect. Petitioner was also responsible for underpayments of his tax liabilities for 1977, 1978, and 1979. Such underpayments were also due to willful neglect and not reasonable cause. There were also underpayments of petitioner's estimated tax for 1977, 1978, and 1979. OPINION According to section 6012, every individual, who has gross income of $1,000 or more for a given tax year, is required to file an income tax return. [1] When an individual fails to file a return, and the failure is not due to reasonable cause, section 6651(a)(1) imposes an addition to the tax owed. Respondent *560 determined that not only did Mr. Johnson have income for 1977, 1978, and 1979, but that he failed to file income tax returns with regard to his income. Respondent's determinations are accorded a presumption of correctness, and petitioner to prevail must prove otherwise. Welch v. Helvering,290 U.S. 111 (1933); Tax Court Rule 142(a). [2]
For the three years in question, petitioner has stipulated to receiving money from his father and from the Army Reserves. He also received interest income during those years. A dispute exists over the exact nature of the many transfers from Phillip E. Johnson to petitioner. Petitioner contends that the regular monetary transfers from Phillip E. Johnson, his father, to him were the products of disinterested paternal generosity; essentially petitioner would have us believe that his father was merely bestowing gifts upon him. That assertion is ludicrous--especially in view of the facts that petitioner *561 was employed by his father as a laborer, and also that his father indicated on a Request for Verification of Employment that petitioner was employed by him at a base pay of $5.00 per hour and worked 40-50 hours per week. No evidence exits in the record which supports petitioner's characterization of the money except petitioner's self-serving testimony. We have held that testimony may suffice as proof, but in an instance such as here where the testimony is conclusory and subject to doubt, it falls short of overcoming respondent's presumption of correctness. Hearn v. Commissioner,36 T.C. 672 (1961), affd. 309 F.2d 431 (9th Cir. 1962). In conclusion, we hold that petitioner earned income from his father which should have been reported and the attributive taxes should have been paid. As to the amounts received by petitioner in 1977, 1978, and 1979 from his participation in the Army Reserves, it is well settled by this Court and unnecessary to reiterate any further that wages are income. Petitioner's wages are subject to tax regardless of what name or characterization petitioner uses to define the money he received. In short, petitioner had income in *562 1977, 1978, and 1979, and he had a legal obligation to file a proper return for those years. Rowlee v. Commissioner,80 T.C. 1111 (1983). Although petitioner sent 1040A forms to respondent, the returns did not contain sufficient data, as they must to be returns, from which respondent could compute and assess the liability. Reiff v. Commissioner,77 T.C. 1169 (1981). The documents did not rise to the level of income tax returns. Petitioner's purported returns supplied respondent with those wearisome Constitutional objections to which we have turned a deaf ear. His arguments based upon the 1st, 4th, 5th, 7th, 8th, 9th, 10th, 13th, 14th, and 16th Amendments have been dealt with and rejected time and again by this Court. See, Rechtzigel v. Commissioner,703 F.2d 1063 (8th Cir. 1983), affg. 79 T.C. 132 (1982); McCoy v. Commissioner,696 F.2d 1234 (9th Cir. 1983), affg. 76 T.C. 1027 (1981); Richardson v. Commissioner,72 T.C. 818 (1979). We agree with respondent's determination that petitioner failed to file returns without establishing reasonable cause for such failure. *563 Therefore, petitioner is liable for additions to tax in accordance with section 6651(a)(1). Pursuant to section 6653(a) when any part of any underpayment is due to negligence or intentional disregard of the rules and regulations, respondent is authorized to make an addition to tax. As aforementioned, it is petitioner's responsibility to prove that his underpayment was due to neither negligence nor an intentional disregard of the rules. Rule 142(a). Mr. Johnson has volunteered unpersuasive excuses to the Court. Accordingly, we conclude that a part of petitioner's underpayment was due to negligence or intentional disregard of the rules. On this issue, we hold for respondent. Our above conclusions make it quite clear that petitioner Johnson incurred Federal tax liability in the years 1977-1979. Johnson did not make estimated tax payments. We therefore find that petitioner is subject to additions to tax under section 6654(a) for 1977-1979. Estate of Ruben v. Commissioner,33 T.C. 1071 (1960). Petitioner sought to introduce and was permitted at trial to submit a multiplicity of checks and receipts relating to a variety of petitioner's activities. Unfortunately *564 for Mr. Johnson, although he persuaded respondent to stipulate to the stubs and checks evidencing some of these expenses, he never succeeded in establishing that these expenses were indeed deductible expenses. Since petitioner has failed to support his claims for additional deductions, we hold that he is entitled to only the deductions previously conceded by respondent. To reflect concession at trial, Decision will be entered under Rule 155.
Footnotes
1. All section references herein and after refer to the Internal Revenue Code of 1954 as amended and in effect for the years in issue. ↩
2. All rules herein refer to the Rules of Practice and Procedure of the United States Tax Court.↩