JAMES L. PLANTE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Plante v. Commissioner
Docket No. 18733-82.
United States Tax Court
T.C. Memo 1985-117; 1985 Tax Ct. Memo LEXIS 515; 49 T.C.M. (CCH) 963; T.C.M. (RIA) 85117; March 19, 1985. *515 During 1980, P, a driver for United Parcel Service, received compensation in the amount of $28,061.33. In March, 1980, P paid $3,300 to join the Life Science Church. On his 1980 Form 1040 filed with respondent, P reported no income, filing status, exemptions, deductions or tax liability. P attached a copy of his 1980 Form W-2 to the Form 1040. Held, P is not entitled to a theft loss deduction in 1980 for amounts paid to the Life Science Church. Held further, P is liable for the addition to tax for negligence or intentional disregard of rules and regulations under section 6653(a), I.R.C. 1954. Held further, P is liable for the addition to tax for failure to file a return under section 6651(a), I.R.C. 1954. Held further, P is not liable for damages under section 6673, I.R.C. 1954. Ronald J. McDougald, for the petitioner. Charles W. Maurer, Jr., for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: Respondent determined the following deficiency in and additions to petitioner's 1980 Federal income tax: Additions to Tax
Deficiency
Sec. 6651(a) [1] *516 Sec. 6653(a)
$9,231.89
$1,796.38
$461.59
After concessions, the issues for decision are: 1) whether petitioner is entitled to a theft loss deduction in 1980 for amounts paid to the Life Science Church; 2) whether petitioner is liable for additions to tax under section 6651(a) (failure to file a return) and section 6653(a) (negligence or intentional disregard of rules and regulations) and 3) whether damages should be awarded under section 6673. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner James L. Plante resided in East Swanzey, New Hampshire, at the time his petition was filed. During the year in issue, petitioner, a high school graduate, was employed as a driver for United Parcel Service of New York, Inc. (UPS). He received compensation in the amount of $28,061.33 from UPS during 1980. During 1980, Karen Plante (Karen), petitioner's wife, earned wages in the amount of $10,148.37 as a bookkeeper for a bank. Karen, a high school graduate, filed a separate Federal income tax *517 return for 1980. In February, 1980, petitioner attended a meeting sponsored by the Life Science Church held at the Ramada Inn in Keene, New Hampshire. At the meeting, Life Science Church representatives discussed the tax benefits available to ministers of the Life Science Church. At the conclusion of the meeting, petitioner received a 52-page booklet which explained the tax benefits in detail. In late February and early March, 1980, petitioner attended two additional meetings of the Life Science Church. At the meeting, Life Science Church representatives answered petitioner's questions concerning the income tax consequences of forming a chapter of the Life Science Church and becoming a minister therein. On March 4, 1980, petitioner paid $3,300 to the Life Science Church for the following documents: a certificate of ordination, a church charter for the Pine Hill Church, [2] the constitution of the Pine Hill Church, articles and by-laws of the Pine Hill Church, an amendment to the by-laws of the Pine Hill Church, minutes of the first meeting of the board of directors of the Pine Hill Church and a vow of poverty. Petitioner executed the vow of poverty before a notary public on March 7, *518 1980. In March, 1980, following the receipt of the above documents, petitioner opened a church bank account over which both he and Karen shared signatory powers. From March, 1980, to December, 1980, petitioner deposited all paychecks he received and one-half of the paychecks Karen received in the church account. Both petitioner and Karen paid personal expenses from the church account. In April, 1980, petitioner submitted a Form W-4 to UPS claiming total exemption from income tax withholding. Beginning in April, 1980, UPS ceased withholding income tax from petitioner's wages. During 1980, petitioner held approximately two church meetings per month. Petitioner initially held the meetings at a church located in Hinsdale, New Hampshire, but subsequently used the homes of local Life Science Church ministers. These meetings were attended by local Life Science Church ministers and their families. In March, 1981, at a meeting sponsored by the Life Science Church, Frank Ebner (Ebner), a Life Science Church minister, explained to petitioner and other Life Science Church ministers how to prepare *519 their 1980 Federal income tax returns. At the beginning of the meeting, Ebner stated that he was a C.P.A. Pursuant to Ebner's instructions, petitioner filed a 1980 Form 1040 which reported the following information: petitioner's name, address, social security number, occupation, Federal income tax withheld and refund claimed. Petitioner signed the form under penalty of perjury on April 10, 1981. Beneath his signature, petitioner wrote the following: Note: I have taken a vow of poverty copy attached. I have been instructed by the order copy attached. Therefore income is exempt from Federal income tax. Petitioner provided no additional information on the 1980 Form 1040. Petitioner attached copies of the following documents to the above form: his 1980 Form W-2 issued by UPS listing wages in the amount of $28,061.33, his vow of poverty dated March 7, 1980 and a letter of directive from the Life Science Church. A newspaper article appearing in the June 5, 1981, edition of the KeeneSentinel reported the indictment of William Drexler, the founder of the Life Science Church, for conspiring "to defraud the federal government by inducing taxpayers to purchase packets of documents from *520 the Life Science Church * * * by means of false pretenses." Although petitioner read this article in June, 1981, he continued to believe his church was tax-exempt. Sometime in 1981, respondent examined the 1980 Form 1040 filed by petitioner. Following this examination, respondent requested a conference with petitioner to discuss his 1980 Form 1040. Petitioner answered respondent's request by letter dated July 28, 1981, as follows: Please accept this correspondence as "official notice" to you that there are federal law suits pending regarding the matter in question. Because your letter was not written in good faith, and because you are violating my constitutional rights as a citizen, no reply can be made to your letter. Our attorneys have filed litigation in US District Court in the Northern District of California (CIVIL #C811418). One of the specific portions of relief sought is $20,000,000 compensatory damages, "the relative amounts to be paid by each individual defendant according to his [or her] degree of responsibility for and complicity in this violation" of my constitutional rights. I am also advising you that because you signed the letter and participated in this illegal *521 activity, your name has been chosen to be added as a "defendant" in this suit. Petitioner failed to appear at the conference. In the notice of deficiency, respondent determined that the compensation petitioner received in 1980 was subject to Federal income tax. Respondent also asserted additions to tax for negligence and failure to file an income tax return. On July 22, 1982, petitioner filed a petition with this Court for redetermination of the 1980 tax deficiency and additions to tax. By letter dated September 22, 1982, respondent requested a settlement conference with petitioner. Petitioner responded by letter as follows: With reference to your letter, there appears to be some error in your information. I am an ordained minister and a member of a religious order, who is secularly employed as an agent of my church and order. Among my other religious vows, I have taken an irrevocable vow of poverty. The financial remuneration provided for my secular endeavors is legally the income of the church and order, and not mine personally. I have conformed with both sections 3402(m) and 3402(n) of the IR code. My position parallels that as expressed in O.D. 119, IRC 3401(a)(9), treasury *522 regulation S 31.3401(a)(9)-1(b)(5) and treasury regulation S 31.3401(a)(9)-1(d). Please advise if you would like any further verification or clarification and a proper response will be provided. Prior to trial, petitioner submitted to respondent for settlement purposes a Form 1040 which reported the following income and itemized deductions for 1980: wages--$28,061.33, medical and dental expenses -- $35.16, taxes--$72.50, interest expense--$3,119.15, contributions--$22.50, theft loss--$3,200 ($3,300 less $100 exclusion provided by section 165(h)(1)) and miscellaneous deductions--$332.00. Petitioner thus conceded that the wages he received during 1980 were subject to Federal income tax. Respondent agreed to the deductibility of all itemized deductions claimed by petitioner except for the $3,200 theft loss. OPINION 1. Theft Loss Issue
The first issue for decision is whether petitioner is entitled to claim a $1,400 [3] theft loss deduction in 1980. Section 165 allows as a deduction any theft loss sustained during the taxable year and not compensated for by insurance or otherwise. Under section 165(e), a theft loss is "sustained during the taxable year in which the taxpayer discovers *523 such loss." [4] *524 If in the year of discovery, however, there exists a claim for reimbursement, no loss shall be considered sustained until the taxable year in which it can be ascertained with reasonable certainty whether or not reimbursement will be received. Section 1.165-1(d)(3), Income Tax Regs. * * * Petitioner contends that he was defrauded of $3,300 by the Life Science Church in 1980 and, therefore, is entitled to claim a theft loss deduction in 1980 for a portion of this amount. Respondent challenges petitioner's 1980 theft loss deduction for the following reasons: 1) petitioner failed to establish that a theft loss occurred; and 2) petitioner failed to establish that he discovered the alleged theft loss in 1980. On this record, we conclude that petitioner has failed to satisfy his burden of establishing that he discovered the alleged theft loss in 1980. We therefore do not consider whether a theft loss in fact occurred. The record contains no evidence which supports petitioner's contention that he discovered the alleged theft loss in 1980. At trial, petitioner testified that he believed his church was tax-exempt when he filed his 1980 Form 1040 in April, 1981. Petitioner further testified that he continued to believe that his church was tax-exempt despite having read a June 5, 1981, newspaper article reporting the indictment of Drexler for fraud in connection with the sale of certain *525 Life Science Church memberships. Moreover, petitioner continued to argue the tax-exempt status of his church in the following letter dated September 22, 1982, which he sent to respondent: I am an ordained minister and a member of a religious order, who is secularly employed as an agent of my church and order. Among my other religious vows, I have taken an irrevocable vow of poverty. The financial renumeration provided for my secular endeavors is legally the income of the church and order, and not mine personally. I have conformed with both sections 3402(m) and 3402(n) of the IR code. My position parallels that as expressed in O.D. 119, IRC 3401(a)(9), treasury regulation S 31.3401(a)(9)-1(b)(5) and treasury regulation S 31.3401(a)(9)-1(d). Petitioner presented no evidence establishing that he doubted the representations of the Life Science Church concerning the tax-exempt status of his church in 1980. We therefore conclude that petitioner has failed to satisfy his burden of proving that he discovered the alleged theft loss in 1980. Rule 142(a). Petitioner nevertheless argues that "it *526 is reasonable to assert the theft loss in 1980 since the actual expenditure occurred in that year." We disagree. Section 165 clearly provides that a theft loss is deductible only in the year of discovery. Accordingly, respondent is sustained on this issue. [5]
2. Addition to Tax Under Section 6651(a)
We must next decide whether petitioner is liable for the addition to tax under section 6651(a). Section 6651(a) imposes an addition to tax for failure to file a return on the prescribed date unless such failure is due to reasonable cause and not due to willful neglect. To qualify as a return a document must: 1) evidence an honest and genuine endeavor to satisfy the requirements *527 for a return; 2) contain sufficient data from which respondent can compute and assess the taxpayer's liability and 3) disclose such data in a uniform, complete and orderly fashion. Reiff v. Commissioner,77 T.C. 1169, 1177 (1981). Petitioner argues that his 1980 Form 1040 and the attached Form W-2 satisfy the above-mentioned requirements for a valid return. Petitioner further argues that if the documents he filed for 1980 do not constitute a valid return, his failure to file a return was due to reasonable cause and not willful neglect. Conversely, respondent argues that the documents filed by petitioner contain insufficient information to constitute a valid Federal income tax return, and that petitioner's failure to file a valid income tax return for 1980 was not due to reasonable cause. We agree with respondent. The 1980 Form 1040 filed by petitioner provided no information regarding petitioner's income, filing status, exemptions, deductions or tax liability. Because the attachment of a Form W-2 "does not substitute for the disclosure on the return, itself, of information as to income, deductions, credits and tax liability," Beard v. Commissioner,82 T.C. 766, 779 (1984), we find *528 that petitioner failed to disclose a significant portion of the information necessary to compute his 1980 tax liability. See Reiff v. Commissioner,supra.Accordingly, we hold that the documents petitioner filed in 1980 with respondent do not constitute a valid income tax return. We are also unpersuaded by petitioner's argument that because he relied on the advice of dcompetent tax counsel in preparing the 1980 Form 1040, his failure to file a valid 1980 income tax return was due to reasonable cause and not willful neglect. We agree that good-faith reliance on the advice of competent tax counsel, which advice is based on full knowledge of the relevant facts, can constitute reasonable cause for failure to file a return. Steven Bros. Foundation, Inc. v. Commissioner,39 T.C. 93, 129-130 (1962), revd. on another issue 324 F.2d 633 (8th Cir. 1963). The record, however, contains no evidence that the advice petitioner received was given by competent tax counsel. Although petitioner testified at trial that he relied on the advice of Frank Ebner, a person he believed to be an accountant, petitioner presented no evidence of Ebner's experience, expertise or competence. Petitioner bears the *529 burden of proving that his failure to file was due to reasonable cause and not willful neglect. Rule 142(a); Conlorez Corporation v. Commissioner,51 T.C. 467 (1968). Petitioner has failed to satisfy this burden and accordingly respondent's determination is sustained. 3. Addition to Tax Under 6653(a)
The next issue we must decide is whether petitioner is liable for addition to tax under section 6653(a). Section 6653(a) provides that if any part of the underpayment of tax is due to negligence or intentional disregard of rules and regulations, an amount equal to five percent of the underpayment shall be added to the tax. Petitioner bears the burden of proving that his underpayment was not due to negligence or intentional disregard of rules and regulations. Rule 142(a); Farwell v. Commissioner,35 T.C. 454 (1960). Petitioner challenges the addition to tax for negligence, arguing that he prepared his 1980 Form 1040 in good faith reliance on the advice of Ebner, a Life Science Church minister whom petitioner believed to be an accountant. We are not persuaded by this argument. Although we agree that in certain circumstances a taxpayer may rely in good-faith on the advice of competent *530 tax counsel to avoid the addition to tax for negligence; Nelson v. Commissioner,19 T.C. 575 (1952); Woodbury v. Commissioner,49 T.C. 180 (1967); Conlorez Corporation v. Commissioner,51 T.C. 467 (1968), as discussed above, the record contains no evidence that Ebner was qualified to give competent tax advice. Indeed, we do not believe that competent tax counsel would have advised petitioner that his 1980 income was exempt from taxation. We therefore conclude that petitioner has failed to satisfy his burden of proving that no part of his 1980 underpayment was due to negligence or intentional disregard of rules and regulations and accordingly the addition to tax under section 6653(a) is sustained. 4. Damages Under Section 6673
The final issue is whether petitioner is liable for damages under section 6673. Section 6673 provides that the Court may award damages up to $5,000 to the United States whenever it appears a proceeding has been instituted or maintained primarily for delay or that the taxpayer's position is frivolous or groundless. On the particular record before us, we choose not to award damages under section 6673. Prior to trial, petitioner conceded that the compensation *531 he received during 1980 was subject to tax. Moreover, we do not believe that petitioner pursued the theft loss argument primarily for delay. As a cautionary word to other taxpayers, however, we observe that this holding should not be read as a signal that routine reliance on the theft loss argument will be grounds in other cases for avoiding damages under section 6673. Respondent's request for damages under section 6673 is therefore denied. To reflect the foregoing and prior concessions, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 in effect for the year in issue. All rule references are to the tax Court Rules of Practice and Procedure.
2. Petitioner's chapter of the Universal Life Church was referred to as the "Pine Hill Church."↩
3. Petitioner concedes that the $3,300 theft loss should be reduced by recruiting fees of $1,800 petitioner received from the Life Science Church during 1980 but failed to report. Petitioner, however, failed to further reduce this amount by the $100 exclusion provided by section 165(h)(1). ↩
4. Section 165 provides in relevant part as follows: SEC. 165. LOSSES. (a) General Rule.--There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * * (c) Limitation on Losses of Individuals.-- In the case of an individual, the deduction under subsection (a) shall be limited to-- * * * (3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. * * * (e) Theft Losses.--For purposes of subsection (a), any loss arising from theft shall be treated as sustained during the taxable year in which the taxpayer discovers such loss.
5. On March 22, 1984, at the conclusion of the trial of this case, we permitted respondent to move to file an amendment to his answer to conform the pleadings to the proof with respect to the unreported income petitioner disclosed at trial. However, since respondent made no move to file such motion until June 8, 1984 (which was after the due date for opening briefs herein), we denied the motion on the grounds that it was untimely). We therefore do not consider the question of additional unreported income in 1980.↩