RICHARD M. KELTON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kelton v. Commissioner
Docket No. 19909-82.
United States Tax Court
T.C. Memo 1986-51; 1986 Tax Ct. Memo LEXIS 559; 51 T.C.M. (CCH) 413; T.C.M. (RIA) 86051; February 4, 1986. *559 Held: Petitioner is not entitled to a theft loss deduction for the fees paid for membership in Life Science Church in the year of payment; held further, additions to tax under sections 6651(a), 6653(a), and 6654(a) are sustained but damages under section 6673 are not imposed. Ronald J. McDougald, for the petitioner. Charles W. Maurer, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: For the calendar year 1980, respondent determined deficiencies in income tax and additions to tax as follows: Additions to Tax
Deficiency
Sec. 6651(a) [1]
Sec. 6653(a)
Sec. 6654(a)
$10,660.88
$1,505.34
$533.04
$310.00
The issues before the Court are whether petitioner is entitled to claim a deduction for a theft loss on account of money paid as a membership fee to the Life Science Church in the year of payment and whether petitioner is liable for the described additions to tax under sections 6651(a), 6653(a), and 6654(a) and for damages under section 6673. For convenience we *561 combine our Findings of Fact and Opinion. Some of the facts have been stipulated and are so found. At the time of the filing of the petition herein, petitioner Richard M. Kelton (Kelton) resided in Winchester, New Hampshire. Kelton is a high school graduate and in 1980 was a driver for United Parcel Service. In the spring of 1980, he was told about the Life Science Church and invited to a meeting at a Ramada Inn in Keene, New Hampshire by an individual by the name of James L. Plante. [2] After attending several more meetings, Kelton decided to set up his own Life Science Church in accordance with the information given him. Kelton was fully aware of the tax ramifications of his action. Petitioner, through his so-called church, intended to and did in fact make gifts, counsel and assist children, and carry out other activities which were of a charitable or religious nature. In the summer of 1980 he paid $3,300 for the documents and instructions as to how to set up his own Life Science Church under the name "New Life Church." The trustees were himself, his wife, and his son; a successor trustee was a niece of his wife. Kelton signed a vow of poverty, a copy of which he attached *562 to his 1980 Federal income tax return. He amended his W-4 to claim 19 allowances, the maximum which his employer's computer system would allow, which substantially eliminated income tax withholding. In the spring of 1981 he, along with other individuals similarly situated, attended a meeting to receive instruction in filling out his 1981 income tax return. During 1980, Kelton became aware that William E. Drexler (Drexler), the Life Science Church Bishop and chief sponsor of these activities, was in trouble with the law. Kelton also admitted that he backdated the vow of poverty to January 22, 1980. In prior years, Kelton had used several tax return preparers, but he did not consult with any of them or with anyone else other than Life Science Church representatives with respect to his 1980 tax return. Kelton used a Treasury Department Form 1040 for his 1980 income tax return. He properly filled out the lines for his name, *563 address, and social security number. He showed his occupation as "minister." At the bottom of the second page of the form, Kelton added a reference to his vow of poverty. In lines 55 and 62 through 64 he stated the amount of tax withheld and claimed a refund of that amount. Finally, he signed his name and date on the appropriate line and attached to the return his W-2, his vow of poverty, and some Life Science Church instructions. The balance of the return was blank. [3]
*564 Kelton refused to cooperate with respondent's agent when his income tax return was selected for audit and declined to respond to letters from respondent's counsel requesting that Kelton contact counsel. Respondent's counsel also notified Kelton in December 1982 that respondent might request the Court to impose damages under section 6673. Kelton's claim of theft loss is predicated on the theory that he was defrauded in 1980 by Drexler, who in 1982 was convicted on several counts including conspiracy and assisting in the preparation of false income tax returns. However, during 1980 from the time Kelton paid the $3,300 to the Life Science Church representatives through the filing of his 1980 Federal income tax return in April 1981, Kelton apparently believed that he could escape income tax by this action. He continued to adhere to that belief in refusing to cooperate with respondent's agents during the audit of his income tax return and in the filing of the petition to this Court in August 1982, using what appears to be a printed form for the petition presumably furnished by Life Science Church representatives.Until sometime in 1984 when Kelton employed counsel, he continued to *565 adhere to this Life Science Church charade. Under section 165(e) a loss from theft is deductible only in the taxable year in which the taxpayer discovers such loss. Without in any way implying that petitioner is entitled to a theft loss in some later year, petitioner cannot claim such loss in the year 1980 since he had not at any time during that year "discovered" that he had been defrauded. Respondent has asserted the addition to tax under section 6651(a) on the theory that the tax return failed by Kelton does not qualify as a tax return under Reiff v. Commissioner,77 T.C. 1169, 1177 (1981), and other cases. Respondent claims that the Form 1040 filed by Kelton shows no filing status or claim for exemptions, does not identify Kelton's wife or otherwise indicate his marital status, and shows neither gross, adjusted gross nor taxable income. Similarly, the tax calculation lines are blank. Respondent is correct. The original Form 1040 which was stipulated into evidence fails to provide respondent with sufficient information to determine a tax liability for Kelton for that year. It is true, as petitioner argues, that a gross tax liability could be computed and *566 perhaps a tax return prepared by respondent from the W-2 attached to the return, but this is immaterial. For a form to be recognized as a tax return it must (i) contain sufficient data to calculate the tax, (ii) purport to be a return, (iii) reflect an honest and reasonable attempt to satisfy the requirements of the tax law, and (iv) be executed under penalties of perjury. Beard v. Commissioner,82 T.C. 766, 777 (1984). The document filed by Kelton meets only the fourth requirement. It does not constitute a tax return for purposes of section 6651(a)(1). See Plante v. Commissioner,T.C. Memo. 1985-117; Howell v. Commissioner,T.C. Memo. 1981-631. Petitioner also claims that the addition to tax under section 6651(a)(1) is not applicable because he relied upon the advice of the Life Science personnel in preparing the returns. There is no evidence that any of the Life Science personnel who advised petitioner were competent to do so or were undertaking to give independent competent tax advice. See Stevens Bros. Foundation, Inc. v. Commissioner,39 T.C. 93, 133 (1962), revd. on another issue 324 F.2d 633 (8th Cir. 1963); *567 United States v. Boyle, 469 U.S.     (January 9, 1985). It is significant that Kelton deliberately failed to consult with the tax return preparers he had used in past years. We hold for respondent on the section 6651(a) addition for failure to file a tax return. With respect to the addition to tax under section 6653(a) for negligence, Kelton argues that he prepared his tax return in good faith reliance upon the advice of Life Science Church representatives. However, it is quite apparent on this record that Kelton knew that an income tax return was required, that he had failed income tax returns reporting his income in prior years, and in the case of 1980, as we have noted, he made a conscious decision to refrain from consulting with any of the tax return preparers whom he had used in prior years. There is no showing that he made any inquiry as to the competence of any of the Life Science Church representatives to advise as to tax return preparation or tax liability. Kelton has failed to satisfy his burden of proving that no part of his 1980 underpayment was due to negligence or intentional disregard of rules and regulations. We sustain the addition to tax under section *568 6653(a). As to the addition to tax under section 6654(a), this addition is mandatory in these circumstances. Extenuating circumstances, if any existed, which is not the case herein, would be irrelevant. Estate of Ruben v. Commissioner,33 T.C. 1071 (1960). The issue of damages under section 6673 is not entirely clear. There is no evidence before us that petitioner actually knew on the date he filed his petition in this Court that the contentions made were frivolous or that he filed the petition primarily for delay. On the advice of counsel, he at least abandoned any contention with respect to the Life Science Church prior to trial. Accordingly, we give petitioner the benefit of the doubt and deny respondent's request for damages. Decision will entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, and all rule references are to the Tax Court Rules of Practice and Procedure.↩
2. See Plante v. Commissioner,T.C. Memo. 1985-117↩, in which substantially the same issues were involved and all were decided against that taxpayer except for damages under sec. 6673. That taxpayer was also employed by United Parcel Service.
3. The original tax return was filled out by Kelton to the extent described in the text in blue ink. It has words and figures stamped on the return in shades of purple and red ink, respectively. In addition the date apparently selected for audit is inserted by hand in light red ink. Finally, by hand, filing status as single is checked, the number "1" is inserted on line 7 (the line for exemptions), the dollar amount of wages shown in the W-2 is inserted as wages on line 8 and as total income and adjusted gross income on lines 22 and 31. These insertions, together with other lines and circles, are all in reddish-brown ink. The stipulation recites that: "All purple and brown notations" on the exhibit were made by respondent's agents. We construe the stipulation to constitute an agreement by petitioner's counsel that Kelton inserted neither income figures nor noted the exemptions claimed on the form. This interpretation is consistent with petitioner's brief.↩