JAMES J. SPAULDING, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Spaulding v. Commissioner
Docket No. 9525-85.
United States Tax Court
T.C. Memo 1988-383; 1988 Tax Ct. Memo LEXIS 410; 55 T.C.M. (CCH) 1619; T.C.M. (RIA) 88383; August 16, 1988. Peter R. Stromer, for the petitioner. Rhonda Barry, for the respondent. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: By notice of deficiency dated February 15, 1985, respondent determined deficiencies in petitioner's Federal income tax and additions to tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653(b) [1]
Sec. 6653(b)(1) [2]
1980
$ 5,856.47
$ 2,928.24
--
1981
7,478.00
3,739.00
--
1982
6,026.00
--
$ 3,013.00
*411 Additions to Tax
Year
Sec. 6653(b)(2)
Sec. 6654
1980
--
$ 367.58
1981
--
550.00
1982
50% of the   224.33
interest due on $ 6,026.00
At trial in the instant case, petitioner conceded the deficiencies in tax and the additions to tax other than fraud under section 6653(b), as set forth in the notice of deficiency. Because of these concessions, the sole issue for our determination is whether petitioner's underpayment of taxes for 1980, 1981 and 1982 was due to fraud. FINDINGS OF FACTS Some of the facts herein were stipulated and such stipulations of fact, together with attached exhibits, are incorporated herein by this reference. Petitioner, James J. Spaulding, resided in Kings Park, New York, *412 when the petition in this case was filed. During the years in issue, petitioner was married and had two children. Petitioner's wife is not a party to this case and all references shall refer solely to petitioner, James J. Spaulding. During the years in issue, and until March 1983, petitioner was a member of the Life Science Church. Upon joining the Life Science Church in late 1979, petitioner signed a document purporting to take an irrevocable "vow of poverty" which provided that all of petitioner's possessions and income given to the Life Science Church would revert to the giver (petitioner) instead of continuing perpetually if "civil government officialdom were to 'void' this act" against petitioner's express will. Prior to taking his alleged vow of poverty, petitioner used his wages to pay for ordinary living expenses. Petitioner was not a member of any other church but the Life Science Church during the years in issue. Petitioner and his wife, Rachel Spaulding, filed a joint federal income tax return for the taxable year ending December 31, 1978. For the taxable year 1979, petitioner filed a document with the Internal Revenue Service claiming a vow of poverty and seeking *413 a refund for the entire amount of Federal income tax withheld. Petitioner filed no income tax returns for the years 1980 and 1981. For taxable year 1982, petitioner filed a Form 1040 with respondent. Such form, after disclosing petitioner's name, social security number, and an address given as "c/o Finance Director, Order of St. Matthew, 2030 Merrick Avenue, Merrick, New York 11566" disclosed that petitioner was filing as a single person with no dependents, disclosed wages of $ 24,556.89, which he then excluded from income as "wages nontaxable by reason of taxpayer being an agent of Religious Order." The form disclosed adjusted gross income of zero. The form gave no other or further information with regard to petitioner's income, deductions or personal exemptions, but showed the amount of income tax withheld in the amount of $ 2,977.68 as an overpayment of tax and requested that the entire amount be refunded. For the years 1980, 1981, and 1982, as well as for a number of years prior thereto, petitioner was employed by the New York City Transit Authority (sometimes referred to as the transit authority). During the course of his employment with the New York City Transit Authority, *414 petitioner was promoted from car inspector to foreman of cars and shop. Petitioner's position with the New York City Transit Authority during the years in question did not involve any religious duties. Petitioner's duties with the New York City Transit Authority were the same throughout all three taxable years in issue. The New York City Transit Authority did not negotiate with any church or religious organization regarding petitioner's services, nor was there any contract or other agreement between the New York City Transit Authority and any church or religious organization regarding petitioner's services. All negotiations for petitioner's services were done through a union, namely the New York City Transit Workers Union. Union dues were deducted from petitioner's salary. The Life Science Church had no control over the way petitioner handled his transit authority duties. Neither the Life Science Church nor any other religious organization ever had contact with the transit authority to see if petitioner was performing his job properly. The wages paid to petitioner by the New York City Transit Authority for his services during the years in issue were paid directly to him with *415 no restrictions by the New York City Transit Authority on their use. The wages received were used by petitioner to pay his personal, family and living expenses. For the years 1980, 1981 and 1982, petitioner received compensation from his employer in the respective amounts of $ 22,729.57, $ 26,397.80, and $ 24,556.89. On or about October 24, 1979, petitioner filed an "Employees Withholding Allowance Certificate" (Form W-4) with his employer, the New York City Transit Authority, claiming 50 "allowances" or personal exemptions, at the rate of $ 1,000 each. The purpose of filing the form with the New York City Transit Authority was to induce petitioner's employer to compute petitioner's income tax withholding on wages pursuant to an allowance of 50 personal exemptions. This form remained in effect with petitioner's employer until October 16, 1981, when the Internal Revenue Service notified the New York City Transit Authority to ignore this withholding certificate and withhold tax from petitioner's wages on the basis of one personal exemption. In response to the aforementioned notification, the New York City Transit Authority began withholding on the basis of one allowance only. *416 On or about January 8, 1982, petitioner attempted to file a new and different Form W-4 with his employer, in which he claimed to be "exempt" from the requirement of withholding tax on his wages. Such form was disregarded by his employer. Shortly after the close of each of the taxable years, petitioner's employer furnished him with Forms W-2, Wage and Tax Statements, showing the amount of petitioner's compensation. Petitioner received a Form W-2 for the taxable year 1982 showing wage income of $ 24,556.89 from his employer and $ 2,977.68 in Federal income tax was withheld. For years 1980 and 1981, petitioner, in response to an inquiry by the Internal Revenue Service, indicated that his total income for the years in question was less than the amount required for filing an income tax return. OPINION Our consideration of this case focuses in part on the relationship of petitioner to his "Life Science Church" and his "vow of poverty" in connection herewith. Respondent claims that petitioner's underpayment of tax for the years 1980, 1981 and 1982 was due to fraud; petitioner has conceded the fact of underpayment, but denies that such underpayment was due to fraud. In support *417 of that denial petitioner relies on section 3401(a) and argues that he filed Forms W-4 with respondent claiming 50 withholding allowances and later claimed exempt status in accordance with instructions he received from the religious superiors of the Life Science Church. The addition to tax in the case of fraud is a civil sanction provided primarily as a safeguard for the protection of the revenue and to reimburse the government from the taxpayer's fraud. Helvering v. Mitchell,303 U.S. 391, 401 (1938). Respondent has the burden of proving, by clear and convincing evidence, that some part of the underpayment for each year was due to fraud. Section 7454(a); Rule 142(b); Hebrank v. Commissioner,81 T.C. 640, 642 (1983); Stone v. Commissioner,56 T.C. 213, 220 (1971); Otsuki v. Commissioner,53 T.C. 96, 105 (1969). This burden is met if it is shown that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968), cert. denied 393 U.S. 1020 (1969); *418 Webb v. Commissioner,394 F.2d 366, 377 (5th Cir. 1968). affg. a Memorandum Opinion of this Court. The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner,67 T.C. 181 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud will never be presumed. Beaver v. Commissioner,55 T.C. 85, 92 (1970). Fraud may, however, be proved by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. Thus, the taxpayer's entire course of conduct may establish the requisite fraudulent intent. Rowlee v. Commissioner,80 T.C. 1111, 1123 (1983); Grosshandler v. Commissioner,75 T.C. 1, 19 (1980); Stone v. Commissioner, supra at 223-224. In addition to the necessary fraudulent intent respondent must show that there was an underpayment of tax in each year. Shaw v. Commissioner,27 T.C. 561 (1956), affd. 252 F.2d 681 (6th Cir. 1958); Stone v. Commissioner, supra.For 1982 and for purposes of the addition under section *419 6653(b)(2), respondent must also establish the portion of the underpayment that is attributable to fraud. It is clear from the record that petitioner had sufficient income in each year in issue to require him to file a return. Further, it is obvious that his wages were fully taxable and petitioner admits as much by his concession of the deficiencies. Therefore, the first element to be shown in respondent's burden of proof -- that there was an underpayment -- has been unquestionably satisfied. The evidence produced by respondent also clearly and convincingly proves petitioner's fraudulent intent to evade taxes owing for the years 1980, 1981 and 1982. Petitioner in this case failed to file Federal income tax returns for 1980 and 1981. While the failure to file an income tax return is not, standing alone, proof of fraud on the part of the taxpayer, Kotmair v. Commissioner,86 T.C. 1253 (1986), such failure to file may be considered in connection with other facts. Rowlee v. Commissioner, supra.The fact that petitioner filed a Federal income tax return for 1978 is evidence that he knew of his obligation to pay Federal income tax with respect *420 to his income. See United States v. McCabe,416 F.2d 957 (7th Cir. 1969), cert. denied 396 U.S. 1058 (1970) (taxpayer's filing of timely returns in prior years is evidence which permits the inference that he knew the law required him to file returns and that he intentionally failed to do so). The fact of petitioner's fraudulent intent is satisfactorily established by his filing of false and misleading Forms W-4 with his employer. It is well established that the filing of false withholding forms is evidence of fraud. Rowlee v. Commissioner, supra at 1125; Stephenson v. Commissioner,79 T.C. 995, 1007 (1982), affd. 748 F.2d 331 (6th Cir. 1984); Habersham-Bey v. Commissioner,78 T.C. 304, 313-314 (1982). In this case petitioner filed, on or about October 24, 1979, a Form W-4 under penalty of perjury, with his employer, in which he claimed 50 allowances. There was no statement on the form explaining the reasons for the 50 allowances claimed thereon, nor has petitioner presented any evidence which would support such a claim. Petitioner's filing of a false withholding form thus disrupted *421 the orderly process of tax collection. See Hebrank v. Commissioner, supra.Even after the New York City Transit Authority recommenced the withholding of Federal income tax from petitioner's wages at the direction of the Internal Revenue Service in October 1981, petitioner then filed on January 8, 1982, a revised Form W-4 claiming that he was "exempt" from filing. Petitioner's certifying under penalties of perjury on the revised Form W-4 that he wither owed no tax for the prior year or was due a full refund of taxes withheld is demonstrative of his intentional, wrongful purpose to evade taxes he knew to be due and owing. Further, when his attempt to claim exempt status for 1982 failed, petitioner filed a Form 1040 for taxable year 1982 showing his name, social security number, the address of the Order of St. Matthew, occupation as an agent of a religious order, single filing status, and wages which he later deducted under adjusted gross income with a notation that his wages were nontaxable by reason of his being an agent of a religious order. He then asked for a refund of Federal income tax withheld that year. Taken together, the facts demonstrate that petitioner *422 did not make an honest and reasonable attempt to satisfy the requirements of the tax law. See Beard v. Commissioner,82 T.C. 766 (1984), affd. 793 F.2d 139 (6th Cir. 1986). Petitioner would have us believe that his failure to file returns, the claiming of 50 exemptions and his later attempt to believe that petitioner could honestly think that he could escape liability for Federal income taxation and still enjoy the unfettered use of all of the wages that he had earned by so simple a step as the creation of a church. In this regard we find no significant difference in fact or law from our holding in Stephenson v. Commissioner, supra.Petitioner enjoyed the fruits of his labors earned subsequent to his "vow of poverty" as he enjoyed them before his vow. Petitioner's claim that he was an agent of the church in his activity is not well founded, as representatives of the New York City Transit Authority provided credible testimony establishing that petitioner's religious practices were in no way connected with his employment duties. The facts here are similar to countless others where the taxpayer has sought sanctuary in the free exercise *423 clause of the First Amendment. In short, petitioner "desire[s] salvation not from sin or temptation, however, but from the most earthly of mortal duties -- income taxes." Mone v. Commissioner,774 F.2d 570, 571 (2d Cir. 1985), affg. Memorandum Opinions of this Court. See also Miedaner v. Commissioner,81 T.C. 272 (1983); Stephenson v. Commissioner, supra at 1008. Moreover, petitioner's reliance on section 3401(a)(9) is misplaced. That section provides that "the term 'wages' means all renumeration * * * for services performed by an employee for his employer, * * * except that such term shall not include renumeration paid * * * for services performed by a duly ordained, commissioned, or licensed minister of a church in the exercise of his ministry or by a member of a religious order in the exercise of duties required by such order." The record here establishes that petitioner received wages from the New York City Transit Authority in his capacity as a car inspector, and later as a foreman and that the wages were used by petitioner to pay his personal, family and living expenses. Petitioner performed no religious duties for the *424 transit authority. No one, including the Life Science Church ever reviewed petitioner's work, nor did anyone from that religious order contact the transit authority to see if petitioner was performing his job properly and in accordance with his vow. The record also demonstrates that the transit authority negotiated only with a union for petitioner's services. Petitioner stipulated that his employer had no contract or agreement with any religious order, and did not negotiate with any religious order regarding petitioner's services. Further, petitioner was paid for his services in his individual capacity with no restrictions on the use of the funds, nor was there any change in the method of payment for his services over the course of his employment. See Schuster v. Commissioner,84 T.C. 764 (1985), affd. 800 F.2d 672 (7th Cir. 1986). Petitioner, through rebuttal, attempted to introduce into evidence certain documents which he believes indicates his lack of fraudulent intent. He claimed that at the time he prepared his 1982 Form 1040 he was a member of the Order of St. Matthew. Petitioner further claimed that he prepared his 1982 Form 1040 in accordance *425 with instructions he received from Claude Sommerlatte, Financial Director of the Order of St. Matthew, and therefore did not intend to fraudulently deprive the government of its revenue. Mr. Sommerlatte, who was employed by the Department of Sanitation and was the keeper of records for the Order of St. Matthew, testified that petitioner complied with instructions from Leland J. Graff (Graff), a certified public accountant, on the proper way to fill out the 1982 Form 1040 as a member of the Order of St. Matthew. Petitioner submitted several exhibits, including correspondence attesting to the "good work" of members of the Order of St. Matthew as well as letters from Graff to various individuals who were members of the Order of St. Matthew advising them with respect to their 1982 Forms 1040. We conclude that the fact that petitioner became a member of the Order of St. Matthew shortly prior to filing his 1982 Form 1040 is irrelevant in this case. For the years in issue, petitioner was a member only of the Life Science Church. He did not join the Order of St. Matthew until sometime in March or April 1983, at which time he became acquainted with Mr. Sommerlatte. There is no evidence *426 in the record as to when petitioner actually received the documents advising him as to the filing of the 1982 Form 1040. There were no letters admitted into evidence specifically addressed to him, nor was it established that Mr. Sommerlatte or any one else from the Order of St. Matthew advised petitioner on how to prepare his "return." One final matter merits brief discussion. During the course of trial in the instant case, petitioner continually asserted his privilege against self-incrimination under the Fifth Amendment, even though respondent's counsel advised petitioner and his counsel that he was not the subject of any criminal investigation. On brief, petitioner has asserted that he was compelled to make certain disclosures over objections of his counsel despite his good faith assertions of his Fifth Amendment privilege. He therefore argues that none of his testimony may be used to sustain the civil fraud penalty because it was obtained in violation of his right against self-incrimination. Respondent, on the other hand, contends that petitioner's assertion of the Fifth Amendment privilege was frivolous and his refusal to testify despite being directed to do so by this Court *427 is probative evidence from which a negative inference may be drawn. We do not need to decide whether a patently spurious claim of reliance on the Fifth Amendment, standing alone, would establish fraud, for there is other compelling evidence in this case which clearly and convincingly establishes fraud, as set forth above. However, would emphasize that the taxpayer may not invoke the Fifth Amendment privilege against self-incrimination where the possibility of criminal prosecution is remote or unlikely. Steinbrecher v. Commissioner,712 F.2d 195 (5th Cir. 1983), affg. T.C. Memo. 1983-12; Rechtzigel v. Commissioner,79 T.C. 132 (1982), affd. per curiam 703 F.2d 1063 (8th Cir. 1983); Reiff v. Commissioner,77 T.C. 1169 (1981); McCoy v. Commissioner,76 T.C. 1027 (1981), affd. 696 F.2d 1234 (9th Cir. 1983). Petitioner failed to present the Court with any information from which we could fairly conclude that there was a real and appreciable danger of self-incrimination. Respondent's counsel stated on the record petitioner was not the subject of any criminal investigation for the *428 years in issue. Under the facts and circumstances in this case, petitioner's claim of the privilege against self-incrimination is not warranted. Petitioner will not be permitted to use this unwarranted claim to "draw a conjurer's circle about the whole matter," United States v. Sullivan,274 U.S. 259, 264 (1927), nor may he use such an excuse for his failure to rebut the clear and convincing evidence of fraud put forth by respondent.[3]
*429 We are convinced from the record that petitioner knowingly engaged in deliberate conduct intended to defeat the payment of Federal income tax which he knew to be owing. Accordingly, we hold that respondent has satisfied his burden of proving fraud by clear and convincing evidence. Finally, we hold that respondent has proven by clear and convincing proof that the entire underpayment for 1982 is attributable to fraud. Petitioner is therefore liable for the additions to tax under section 6653(b) for taxable years 1980, 1981 and 1982. To reflect the concessions and the foregoing, Decision will be entered for the respondent.
Footnotes
1. Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. For taxable years 1980 and 1981, the addition to tax for fraud was determined under section 6653(b) since sections 6653(b)(1) and 6653(b)(2) were only effective for 1982 and later years. ↩
3. Respondent has asked us to draw an adverse inference from petitioner's refusal to answer questions on Fifth Amendment grounds. In a civil proceeding we may draw a negative inference from party's invocation of his Fifth Amendment right against self-incrimination provided that there is some independent evidence in addition to the mere invocation of the privilege upon which to base the negative inference. Baxter v. Palmigiano,425 U.S. 308 (1976); United States v. Local 560 of the International Brotherhood of Teamsters,780 F.2d 267, 292-293 n. 32 (3d Cir. 1985), cert. denied 476 U.S. 1140 (1986). In the instant case respondent has presented sufficient other probative evidence against petitioner to establish that petitioner intended to evade income tax so that we need not draw the requested inference to reach our conclusion. Were we inclined to draw any inference, the rule set forth in Baxter,↩ therefore, would apply.