*Decision will be entered under Rule 155.*

JAMES O. DRUKER AND JOAN S. DRUKER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 9622–79.    Filed October 15, 1981.

*James O. Druker*, pro se.
*Paula Schwartz Frome*, for petitioner Joan S. Druker.
*Vincent R. Barrella* and *Deborah B. K. L. Rosensweig*, for the respondent.

TANNENWALD, *Chief Judge*: Respondent asserted deficiencies in petitioners' income taxes as follows:

|                    | 1975     | 1976       |
|--------------------|----------|------------|
| James O. Druker    | $538.95  | $3,251.97  |
| Joan S. Druker     | 782.85   | 1,309.56   |

In his answer, respondent alleged that petitioners were liable for additions to tax pursuant to section 6653(a)[1] in the following amounts:

|                    | 1975     | 1976     |
|--------------------|----------|----------|
| James O. Druker    | $26.95   | $162.60  |
| Joan S. Druker     | 39.14    | 65.48    |

After concessions by the parties, the issues remaining are: (1) The constitutionality of the so-called marriage penalty; (2) whether, under section 6013, petitioners may change their filing status to joint; (3) whether petitioner James O. Druker is entitled to a home office deduction for 1976; and (4) whether petitioners are liable for the additions to tax under section 6653(a).

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly. Only those facts necessary to our decision on the disputed issues will be set forth.

Petitioners resided in New York, N.Y., at the time the petition herein was filed. At all times pertinent to this proceeding, James O. Druker (James) and Joan S. Druker (Joan) were married to each other.

James filed timely Federal income tax returns for 1975 and 1976 as a married individual filing a separate return. However, he computed his tax liability for said years according to the provisions of the Internal Revenue Code of 1954 applicable to an unmarried individual. Joan timely filed her tax returns for 1975 and 1976 in the same manner. Respondent deter-

---

[1]All section references, unless otherwise indicated, are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, as are all references to the Code. All references to a Rule, unless otherwise indicated, are to the Tax Court Rules of Practice and Procedure.

mined that each of the petitioners was subject to tax at the rates applicable to married individuals filing separately.

Prior to the filing of petitioners' 1975 returns, James consulted with the U.S. attorney for the Eastern District of New York and with individuals in respondent's Intelligence Division. He explained that he and his wife wished to challenge the marriage penalty, but wanted to be certain that there could be no claims of fraud or willfulness. Following these conversations, petitioners filed their returns for 1975 as described above (see p. 868 *supra*) with the following letter addressed to respondent attached:

Dear Sir:

After due consideration, my wife and I have decided that, although we do not qualify under the existing tax laws, we are going to apply Table X (for single persons) in calculating the amount of income tax due and owing by us for the calendar year 1975. The reason for this is that we feel most strongly that the present income tax structure unfairly discriminates against working married couples, and as such is violative of the equal protection clause of the Fourteenth Amendment to the United States Constitution.

In order to avoid any legitimate claim of fraud on our part, we are attaching copies of this letter to the separate income tax returns which we are filing on this date. Moreover, we have checked off the "married, filing separately" box on our returns so that the computer will not overlook the discrepancy between our marital status and the fact that we have applied the single persons' table to our returns.

We are perfectly prepared to litigate this matter, and to pay any taxes due plus interest in the event that we do not prevail. We feel that this course is preferable to that of the sham December 31st divorce—January 1st remarriage used by so many couples to legally obtain a single person's filing status. Indeed, we are unable to comprehend why we should pay several thousand dollars more in taxes than if we chose to get a divorce for one day out of each year. We are confident that the Courts will similarly be unable to see the rationale for these obvious inequities.

Each letter ended with a cross-reference to the spouse's social security number to enable respondent to match the returns. The same letter, with the dates changed, was filed with petitioners' 1976 returns.

On April 24, 1979, James requested a recomputation of petitioners' deficiencies for 1975 and 1976 based on joint filing status. Petitioners intended to litigate the constitutionality of the marriage penalty, but wanted the amount of any decision entered against them to be computed using the schedule in section 1(a).

Prior to January 1975 and subsequent to January 1978,

James was an attorney engaged in private practice. From January 1975 to July 1976, he worked in the U.S. Attorney's Office. From July 1976 to January 1978, he was employed by the Nassau County (New York) district attorney's office.

During 1976, neither of James' employers required him to maintain an office in his home as a condition of his employment. Nonetheless, during 1976, he maintained an office in the third bedroom of his apartment, which was solely used to hold his law books and legal files from his prior (and planned future) private practice. He reported no income from the private practice of law in 1976.

James claimed $1,440 of the $7,304.90 rental expense he and Joan incurred for their residence as a home office deduction on his 1976 return.

## OPINION

The primary issue presented herein is the constitutionality of the so-called marriage penalty.[2] Although this is the first time this issue has been presented to this Court, other courts have extensively discussed and rejected the arguments asserted herein by petitioners. *Johnson v. United States*, 422 F. Supp. 958 (N.D. Ind. 1976), affd. per curiam sub nom. *Barter v. United States*, 550 F.2d 1239 (7th Cir. 1977), cert. denied 434 U.S. 1012 (1978); *Mapes v. United States*, 217 Ct. Cl. 115, 576 F.2d 896 cert. denied 439 U.S. 1046 (1978). Moreover, we rejected many of these arguments when advanced by a single taxpayer who believed that the tax rates then in effect unconstitutionally discriminated against unmarried individuals.[3] *Kellems v. Commissioner*, 58 T.C. 556 (1972), affd. per curiam 474 F.2d 1399 (2d Cir. 1973).

---

[2]The "marriage penalty" is a result of the current tax schedules which provide higher rates and lower standard deductions for married individuals filing separate returns than for single taxpayers. Compare sec. 1(b) with sec. 1(d). See sec. 63(d). For a more extensive discussion of the reasons for, and problems presented by, the marriage penalty, see B. Bittker, "Federal Income Taxation and the Family," 27 Stan. L. Rev. 1389, 1416–1444 (1975); W. Gerzog, "The Marriage Penalty: The Working Couple's Dilemma," 47 Fordham L. Rev. 27 (1978).

[3]Prior to 1969, single taxpayers could pay as much as 40.9-percent higher Federal income taxes than a married couple with equal income. The Tax Reform Act of 1969, Pub. L. 91–172, sec. 803(a), 83 Stat. 678, lowered the rates applicable to single people to no more than 120 percent of that paid by a married couple with the same aggregate income.

We are in agreement with the result and rationale of *Johnson* and *Mapes*. Since the facts of this case are not in dispute and only legal issues are involved, little would be added by our writing another treatise on this matter. Thus, we shall dispose of most of petitioners' arguments by reference to the discussion of them in the prior cases.

Petitioners primarily rely upon *Hoeper v. Tax Commission*, 284 U.S. 206 (1931). We believe that the distinctions drawn in *Mapes v. United States, supra*, between the Supreme Court's holding in *Hoeper* and the instant situation, i.e., that a married individual may file separately and be taxed on only his or her own income, albeit at a rate schedule which depends on marital status (see 576 F.2d at 902), adequately respond to petitioners' arguments.[4] See also *Hospital Data Center of S.C. v. United States*, 225 Ct. Cl. ___ , 634 F.2d 541, 546 n. 16 (1980); *Johnson v. United States, supra* at 966–968; *Jennemann v. Commissioner*, 67 T.C. 906, 910–911 (1977); *Kellems v. Commissioner*, 58 T.C. at 560.

Petitioners next argue that the separate tax rates work an invidious discrimination against married women and are, therefore, unconstitutional. Relying on *Califano v. Westcott*, 443 U.S. 76 (1979), they argue that, since the rate schedules have roots in the archaic premise that married women remain at home as non-earners to bear and raise children, the rate schedules cannot withstand scrutiny under the due process clause of the Fifth Amendment. The statute struck down in *Westcott* is clearly distinguishable; it limited benefits to families with unemployed fathers without regard to which spouse was the family breadwinner. The Court focused on the gender distinction not being substantially related to any important and valid governmental objective. The provisions of the Code being challenged herein, however, are gender neutral. See secs. 1, 63(d). See generally sec. 7701(a)(17) and (d)(3). Thus, they do not suffer from that constitutional infirmity. See generally *Mapes v. United States*, 217 Ct. Cl. at 123–125, 576

---

[4]The continuing vitality of *Hoeper v. Tax Commission*, 284 U.S. 206 (1931), has been questioned. See generally *Johnson v. United States*, 422 F. Supp. 958, 967 n. 23 (N.D. Ind. 1976), affd. per curiam sub nom. *Barter v. United States*, 550 F.2d 1239 (7th Cir. 1977), cert. denied 434 U.S. 1012 (1978).

F.2d at 901–902; *Johnson v. United States*, 422 F. Supp. at 968–969.

Finally, petitioners argue that, in light of the recent State court decisions removing certain of the property right distinctions between married people and couples simply cohabiting (see *Morone v. Morone*, 50 N.Y.2d 481, 407 N.E.2d 438, 429 N.Y.S.2d 592 (1980); *Marvin v. Marvin*, 18 Cal. 3d 660, 557 P.2d 106, 134 Cal. Rptr. 815 (1976)), the Federal laws drawing such distinctions no longer have a rational basis. This argument is, at best, disingenuous. *Marvin* and *Morone* merely held that unmarried individuals cohabiting may freely contract to share their earnings, property, or expenses. In fact, both cases strongly supported the institution of marriage. 50 N.Y.2d at 484; 407 N.E.2d at 439, 429 N.Y.S.2d at 593; 18 Cal. 3d at 684, 557 P.2d at 122, 134 Cal. Rptr. at 831.[5] Petitioners would have us hold that the distinction drawn between married and unmarried individuals is irrational on the basis of their erroneous interpretations of State court decisions. This we are not prepared to do.

Moreover, although State law determines marital status (see *Boyter v. Commissioner*, 74 T.C. 989, 994 (1980)), Federal law, including the Constitution, governs the validity and interpretation of the Federal tax consequences of such a determination. The constitutional parameters of the question before us have been thoroughly explored in *Johnson v. United States, supra*, and *Mapes v. United States, supra*, and the attack on the so-called marriage penalty rejected in full recognition of the fact that some inequity (and indeed discrimination) is involved but that "No scheme of taxation, whether the tax is imposed on property, income, or purchases of goods and services, has yet been devised which is free of all discriminatory impact." See *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 42 (1973). We think it sufficient for us to state that the

---

[5]In *Marvin v. Marvin*, 18 Cal. 3d 660, 684, 557 P.2d 106, 122, 134 Cal. Rptr. 815, 831 (1976), the court stated, "Lest we be misunderstood, however, we take this occasion to point out that the structure of society itself largely depends upon the institution of marriage, and nothing we have said in this opinion should be taken to derogate from that institution."

differences in exposure to tax liability between married and single persons[6] do not rise to the level of an impermissible interference with the enjoyment of the fundamental right to marry or remain married.

. Having rejected petitioners' claim that the rate schedules and other provisions making up the "marriage penalty" are unconstitutional, we turn next to their alternative argument that they are entitled to change their filing status from married filing separately to married filing jointly. Although, in general, taxpayers may change their filing status from separate to joint (sec. 6013(b)(1)), the making of such an election is limited by section 6013(b)(2).

Section 6013(b)(2) provides, in relevant part:

> (2) LIMITATIONS FOR MAKING OF ELECTION.—The election provided for in paragraph (1) may not be made—
>
> \*       \*       \*       \*       \*       \*       \*
>
> (B) after the expiration of 3 years from the last date prescribed by law for filing the return for such taxable year (determined without regard to any extension of time granted to either spouse); or
> (C) after there has been mailed to either spouse, with respect to such taxable year, a notice of deficiency under section 6216, if the spouse, as to such notice, files a petition with the Tax Court within the time prescribed in section 6213; \* \* \*

Applying this section to the record in this case, petitioners are precluded from electing joint status for 1975 by virtue of subsections 6013(b)(2)(B)[7] and 6013(b)(2)(C). The latter subsection precludes this election for 1976 as well. Petitioners were each mailed deficiency notices on April 13, 1979. Even assuming that they requested a shift to joint filing status in their conversations and letter of April 24, 1979, the subsequent filing of their petitions with this Court precludes such an election at that time. Sec. 6013(b)(2)(C); *Jacobson v. Commissioner*, 73 T.C. 610, 614 (1979); *Richardson v. Commissioner*, 72

---

[6] We note that taxpayers subject to the current "marriage penalty" will receive partial relief beginning in 1982. Economic Recovery Tax Act of 1981, Pub. L. 97–34, sec. 103(a), 93 Stat. 87 (effective for taxable years beginning after Dec. 31, 1981).

[7] Sec. 6013(b)(2)(B) bars joint filing status for petitioners for 1975 because more than 3 years expired from the last date prescribed by law for filing their returns, Apr. 15, 1976 (see sec. 6072), and the earliest date in the record indicating they may have requested an alternative joint filing status, Apr. 24, 1979.

T.C. 818, 826 (1979); *Kirby v. Commissioner*, 35 T.C. 306, 311 (1960).

Petitioners argue that respondent should be estopped from denying their election to file jointly because his agents told them that filing a petition would not prevent it. Petitioners have abysmally failed to convince us, as a factual matter, that they received such advice from respondent's agents. Rule 142(a). Assuming, arguendo, that they had made such a showing, respondent is not bound by the erroneous advice of his agents, especially when it is contrary to the statute. *Dixon v. United States*, 381 U.S. 68 (1965); *Automobile Club v. Commissioner*, 353 U.S. 180 (1957); *Kirby v. Commissioner*, *supra*. Thus, petitioners' deficiencies for 1975 and 1976 are to be computed using the schedules for married individuals filing separately.

We turn next to the home office deduction claimed by James for 1976. The record is clear that he has failed to satisfy the requirements of section 280A, which governs this deduction. He was an employee over the course of the year and has made no showing that the office was used for the convenience of his employer. Sec. 280A(c)(1). Moreover, he reported no income which might have been derived from a separate trade or business for which he may have used the room as the principal place of business. Thus, section 280A(c)(5) also precludes this deduction.

Rather than argue that he is entitled to a deduction for a home office, James contends that the room was used as a storage facility for his law library and files, in lieu of renting a separate warehouse. Since he was not in the trade or business of selling products at wholesale or retail, however, he is not entitled to a home storage deduction. Sec. 280A(c)(2).

The final issue is whether petitioners are liable for the addition to tax for intentionally disregarding the rules and regulations. Sec. 6653(a). Since this issue was raised in the answer, the burden of proof is on respondent. Rule 142(a). Respondent has neither asserted nor introduced evidence that petitioners' underpayment derived from the settled issues or that the claimed home storage deduction was due to negligence or intentional disregard of the rules. Instead, he asserts solely that their use of the unmarried individual tax schedules

constituted an intentional disregard of the rules and that the letter attached to their returns acknowledged this.

We think it clear that petitioners took their action deliberately and in open disregard of the requirements of the statute. There are some early indications that, insofar as section 6653(a) is concerned, reasonable basis for a taxpayer's action might not be considered as justification for ignoring respondent's rules and regulations. See *Journal Co. v. Commissioner*, 46 B.T.A. 841, 846 (1942), revd. on another issue 134 F.2d 165 (7th Cir. 1943). See also S. Rept. 1622, 83d Cong., 2d Sess. 59 (1954), and H. Rept. 2543, 83d Cong., 2d Sess. 80 (1954), wherein an unsuccessful attempt to deal directly with this particular problem is set forth. But it appears that, although respondent's regulations under section 6653(a) do not speak directly to the subject of ."reasonable basis,". such a requirement is involved, under certain circumstances, both in the case of negligence and in that of intentional disregard of respondent's rules and regulations.[8] Compare sec. 1.6694–1(a)(4), Income Tax Regs., with sec. 301.6653–1(a), Proced. & Admin. Regs. We think it important to emphasize that petitioners' position herein is not so frivolous and meritless as to fall within the ambit of numerous cases involving even sincere taxpayers where the addition to tax under section 6653(a) has been imposed, e.g., *Tyner v. Commissioner*, T.C. Memo. 1977–375; *Runnings v. Commissioner*, T.C. Memo. 1977–214. To be sure, the position which petitioners sought to sustain herein has been rejected in two courts, see *Johnson v. United States*, *supra*, and *Mapes v. United States*, *supra*. But it is common knowledge that the "marriage penalty" has been the subject of widespread comment and discussion, including extensive legislative consideration. Under these circumstances, we think that petitioners cannot be said to have maintained a position which was frivolous or meritless. Accordingly, we think that they should not be penalized for seeking to litigate the issue and

---

[8]We note in passing that, in practically every decided case under sec. 6653(a), the issues of negligence and such intentional disregard are joined together and not subjected to separate analysis.

that the addition to tax under section 6653(a) should not be imposed.

*Decision will be entered under Rule 155.*

