T.C. Memo. 1998-172


UNITED STATES TAX COURT


RICHARD S. AND BERNICE F. ROBERTS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 467-97.                    Filed May 11, 1998.


Richard S. Roberts, pro se.


<u>Bradley T. Stanek</u>, for respondent.


MEMORANDUM OPINION


NAMEROFF, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7443A(b)(3)[1] and Rules 180, 181, and 182.

---

[1]  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioners' 1994 Federal income tax in the amount of $3,451. This case was submitted fully stipulated, and the sole issue to be decided is whether petitioners are taxable on any amount of Social Security benefits received in 1994. Petitioners resided in West Covina, California, at the time they filed their petition.

Petitioners' 1994 Federal income tax return reflects adjusted gross income of $136,094.44. Included in that amount is $4,898.72, which is 85 percent of $5,763.20, the amount of Social Security benefits received by petitioner Bernice F. Roberts. In addition, petitioner Richard S. Roberts (petitioner) received Social Security benefits in 1994 in the amount of $13,151. Petitioners contend that no portion of this latter amount is taxable because petitioner will never recoup his basis under the 85-percent taxability system. Several of the stipulated exhibits, which respondent objected to as irrelevant and consisting of hearsay, attempt to demonstrate this fact with historical calculations of petitioner's contributions to the Social Security system and his benefits received. However, as explained below, the calculation in petitioner's exhibits of the amounts of Social Security contributions made and recovered is irrelevant under the statutory scheme for taxation of such benefits.

Section 86 was enacted in 1983. Social Security Amendments of 1983, Pub. L. 98-21, sec. 121(a), 97 Stat. 80. This provision

reversed a longstanding practice of excluding Social Security benefits from income. See S. Rept. 98-23, at 25 (1983), 1983-2 C.B. 326, 327. Congress concluded that "social security benefits are in the nature of benefits received under other retirement systems," and like other retirement benefits, should be taxed to the extent "they exceed a worker's after-tax contributions". Id. at 25-26, 1983-2 C.B. at 328. The maximum portion of taxable benefits was set at one-half in recognition of the fact the Social Security benefits are partially financed by the after-tax contributions of employees and self-employed individuals. Id.

In short, by taxing only a portion of the benefits, Congress intended to allow taxpayers some cost recovery for their contributions (i.e., for the taxes they pay into the Social Security system). Section 86 was amended for 1994 and succeeding years to require that if the sum of a taxpayer's modified adjusted gross income plus one-half of Social Security benefits exceeds $44,000, the taxpayer must include in income up to 85 percent of the Social Security benefits. Omnibus Budget Reconciliation Act of 1993 (OBRA), Pub. L. 103-66, sec. 13215(b), 107 Stat. 476.

The method chosen by Congress to tax Social Security benefits differs from the manner in which other retirement benefits are taxed; viz, allowing taxpayers to exclude from retirement benefits an amount representing an aliquot share of their investment in the retirement plan. See, e.g., sec. 72.

The latter method requires taxpayers to maintain adequate records substantiating their investment in the retirement plan and the amounts previously excluded from income.  Apparently, because Social Security covers a substantially larger population, Congress eliminated this record-keeping requirement, simplifying the task of reporting for the vast majority of taxpayers.  Thus, except as provided in section 86(f), there is no provision in section 86 for treating Social Security benefits as an annuity or pension subject to section 72.[2]

In essence, petitioners question the fairness of section 86. However, this is not the proper forum to question the policy considerations that impelled the enactment of this legislation. "Normally, a legislative classification will not be set aside if any state of facts rationally justifying it is demonstrated to or perceived by the courts."  United States v. Maryland Savings-Share Ins. Corp., 400 U.S. 4, 6 (1970).  The legislative history of section 86, as enacted in 1983, demonstrates that Congress had a valid and rational basis for the distinctions made in the statute:

> By taxing only a portion of social security and railroad retirement benefits (that is, up to one-half

---

[2]  Sec. 86(f) provides the Social Security benefits may be treated for Federal tax purposes as a pension or annuity only for purposes of sec. 22(c)(3)(A), relating to the credit for the elderly and the permanently and totally disabled; sec. 32(c)(2), relating to the earned income credit; sec. 219(f)(1), relating to the deduction for retirement savings; and sec. 911(b)(1), relating to the foreign earned income exclusion.

of benefits in excess of a certain base amount), the Committee's bill assures that lower-income individuals, many of whom rely upon their benefits to afford basic necessities, will not be taxed on their benefits. The maximum proportion of benefits taxed is one-half in recognition of the fact that social security benefits are partially financed by after-tax employee contributions. The bill's method for taxing benefits assures that only those taxpayers who have substantial taxable income from other sources will be taxed on a portion of the benefits they receive. [S. Rept. 98-23, supra at 26, 1983-2 C.B. at 328.]

Subsequently the relevant committee report in connection with the amendment to section 86 in OBRA section 13215(b) further explains the congressional purpose:

The committee desires to more closely conform the income tax treatment of Social Security benefits and private pension benefits by increasing the maximum amount of Social Security benefits included in gross income for certain higher-income beneficiaries. Reducing the exclusion for Social Security benefits for these beneficiaries will enhance both the horizontal and vertical equity of the individual income tax system by treating all income in a more similar manner. To limit the effect of this provision to taxpayers with a greater ability to pay taxes, the present-law income thresholds are maintained. * * * [H. Rept. 103-111, at 654 (1993), 1993-3 C.B. 167, 230.]

We recognize that "'No scheme of taxation, whether the tax is imposed on property, income, or purchases of goods and services, has yet been devised which is free of all discriminatory impact.'" Druker v. Commissioner, 77 T.C. 867, 872 (1981) (quoting San Antonio Indep. Sch. Dist. v. Rodriquez, 411 U.S. 1, 41 (1973)), affd. in part on this issue and revd. in part on another issue 697 F.2d 46 (2d Cir. 1982).

Petitioner's argument stems from the fact that he continued to work after qualifying for Social Security benefits, earned a

substantial amount of income in 1994 (and other years), and continues to pay into the system. He attempts to demonstrate that under the current statutory scheme, he will never be able to recoup all his contributions to the system. The only fair way, he contends, is to permit him to report Social Security payments in a manner similar to that of pensioners under section 72; i.e., to recover * * * on the basis of upon life expectancy. Of course, there is no way to know whether petitioner's calculations and predictions will be accurate. It is also theoretically possible that petitioner will stop working and live long enough to recover all his contributions to the Social Security system. Regardless, we hold that section 86 does not suffer any constitutional infirmity and sustain respondent's determination in this case.

Decision will be entered for respondent.