149 T.C. No. 13

UNITED STATES TAX COURT

FANSU CAMARA AND AMINATA JATTA, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12051-15.                    Filed September 28, 2017.

Although Ps were married at all relevant times, H erroneously claimed single filing status on his 2012 individual income tax return. In the notice of deficiency R changed H's filing status to married filing separately. After petitioning this Court, Ps filed a joint 2012 income tax return. R contends that H's original 2012 single return was a "separate return" such that the limitations of I.R.C. sec. 6013(b)(2) apply to prevent Ps from claiming the benefits available to married taxpayers who file a joint return.

<u>Held</u>: The 2012 return that H originally filed, erroneously claiming "single" status, did not constitute a "separate return" within the meaning of I.R.C. sec. 6013(b). <u>See</u> <u>Ibrahim v. Commissioner</u>, 788 F.3d 834 (8th Cir. 2015), <u>rev'g and remanding</u> T.C. Memo. 2014-8; <u>Glaze v. United States</u>, 641 F.2d 339 (5th Cir. Unit B Apr. 1981), <u>aff'g</u> 45 A.F.T.R.2d 80-740, 1979 WL 1533 (N.D. Ga. 1979).

<u>Held</u>, <u>further</u>, H is entitled to joint filing status and rates.

Fansu Camara and Aminata Jatta, pro se.

Beth A. Nunnink, for respondent.


OPINION


THORNTON, Judge:  By notice of deficiency dated February 10, 2015, respondent determined a $97,342 deficiency in Mr. Camara's 2012 income tax, along with an $11,411 addition to tax under section 6651(a)(2) and a $19,468 penalty under section 6662(a).[1]  In a second notice of deficiency--also dated February 10, 2015--respondent determined a $137,542 deficiency in Mr. Camara and Ms. Jatta's 2013 joint income tax, along with a $6,815 addition to tax under section 6651(a)(1) and a $27,508 penalty under section 6662(a).  After concessions,[2] the only issue remaining for decision is whether section 6013(b)(2)

---

[1]Unless otherwise indicated, section references are to the Internal Revenue Code (Code) in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.  Dollar amounts are rounded.

[2]The parties agree on various adjustments to Mr. Camara's 2012 Schedule C, Profit or Loss From Business.  They also agree that Mr. Camara received $60 of unreported taxable interest in 2012 and that he is not liable for any addition to tax or penalty for 2012.  Additionally, the parties agree that Mr. Camara and Ms. Jatta are liable for a $39,728 deficiency and a $1,924 sec. 6651(a)(1) addition to tax for 2013.

bars Mr. Camara from electing joint filing status and rates for his 2012 tax year.[3]

The parties submitted this case for decision without trial pursuant to Rule 122.

## Background

Mr. Camara was married to Ms. Jatta at all relevant times.[4] Nevertheless, on his 2012 Form 1040, U.S. Individual Income Tax Return, filed on April 15, 2013, Mr. Camara erroneously checked the box for single filing status.

In the notice of deficiency issued to Mr. Camara for his 2012 tax year, respondent changed his filing status from single to married filing separately. On May 8, 2015, while residing in Tennessee, Mr. Camara and Ms. Jatta timely petitioned this Court with respect to that notice of deficiency as well as the notice of deficiency that respondent issued to them for their 2013 tax year.

---

[3]Insofar as the record shows, respondent issued no notice of deficiency to Ms. Jatta for her 2012 tax year. Accordingly, this Court does not have jurisdiction to redetermine any deficiency for her 2012 tax year. See secs. 6212, 7701(a)(11)(B); Rule 13; Pyo v. Commissioner, 83 T.C. 626, 632 (1984). This circumstance, however, does not preclude Mr. Camara from seeking to use joint rates for 2012, having filed a joint return with Ms. Jatta before this case was submitted for decision. See Millsap v. Commissioner, 91 T.C. 926, 929 n.5 (1988); Phillips v. Commissioner, 86 T.C. 433, 441 n.7 (1986), aff'd in part on this issue, rev'd in part, 851 F.2d 1492 (D.C. Cir. 1988).

[4]The record does not suggest that Mr. Camara and Ms. Jatta lived apart at any relevant time.

On May 27, 2016, Mr. Camara and Ms. Jatta filed with the Internal Revenue Service (IRS) a joint 2012 return, which they had both signed. Ms. Jatta had not previously filed any 2012 return with the IRS.

## Discussion

Mr. Camara erred when he checked the box claiming single filing status on his original 2012 income tax return.[5] There is no dispute that he should have either filed his 2012 return as married filing separately or filed jointly with Ms. Jatta.

The parties agree that if Mr. Camara and Ms. Jatta are entitled to elect joint filing status for 2012, the joint return that they filed on May 27, 2016--after receiving the notice of deficiency and petitioning this Court--correctly reflects their 2012 tax liability with certain agreed-upon changes.[6] And respondent concedes on brief that Mr. Camara and Ms. Jatta meet the substantive requirements for joint filing status and rates for 2012. Respondent contends,

---

[5]The record does not reveal why Mr. Camara made this error. Respondent has not suggested that Mr. Camara's error was anything other than a mistake in good faith.

[6]The parties have stipulated that the joint return omits $60 of taxable interest income which the parties now agree must be included in gross income. The parties have also stipulated additional deductions of $2,058 for taxes and licenses that were not claimed on the joint return. See supra note 2.

however, that section 6013(b)(2) now bars Mr. Camara and Ms. Jatta from filing a joint return, and consequently, he suggests, they are procedurally barred from claiming the benefits generally available to married taxpayers who file a joint return. For the reasons discussed below, we disagree.

## A. General Legal Principles

A married individual who "makes a single return jointly with his spouse" is taxed according to a more advantageous tax rate structure (with wider taxable income bands) than a married individual who "does not make a single return jointly with his spouse". Sec. 1(a), (d). In certain other respects as well, for married individuals, filing a joint return may be more beneficial than filing separate returns.[7] The determination of whether an individual is married is generally made as of the close of the taxable year. Sec. 7703(a).

Section 6013 governs whether a married couple may make a joint return. Section 6013(a) allows a married couple to "make a single return jointly of income taxes" subject to three restrictions in paragraphs (1), (2), and (3), which are not applicable in this case.

---

[7]For instance, a married individual who files separately may be denied the standard deduction if the individual spouse itemizes on his or her return, see sec. 63(c)(6)(A), and a married individual who files separately is precluded from taking the American opportunity credit, the lifetime learning credit, and the earned income tax credit, see secs. 25A, 32(d).

Section 6013(b) permits married taxpayers to elect in certain circumstances to switch from a "separate return" to a joint return. (We sometimes refer to this election to switch from a "separate return" to a joint return as the section 6013(b) election to avoid confusion with the section 6013(a) election to make a joint return in the first instance and the "election to file a separate return", as referenced in section 6013(b)(1)). Section 6013(b)(1) provides this general rule: If an individual has filed a "separate return" for a taxable year for which that individual and his or her spouse could have filed a joint return, that individual and his or her spouse may nevertheless "make a joint return" for that year.

Section 6013(b)(2) lists four limitations on this election to switch to a joint return. Because the section 6013(b) election applies only where an individual has filed a "separate return", the section 6013(b)(2) limitations likewise apply only if the individual has filed a "separate return". See Millsap v. Commissioner, 91 T.C. 926, 937 (1988) (overruling Goldberg v. Commissioner, 14 B.T.A. 465 (1928) and declining to follow Smalldridge v. Commissioner, 804 F.2d 125 (10th Cir. 1986), aff'g T.C. Memo. 1984-434); Phillips v. Commissioner, 86 T.C. 433, 439 (1986) (overruling Durovic v. Commissioner, 54 T.C. 1364 (1970), aff'd on this issue, 487 F.2d 36 (7th Cir. 1973)), aff'd on this issue, 851 F.2d 1492 (D.C. Cir. 1988).

## B. Respondent's Contentions

Respondent contends (1) that Mr. Camara's original 2012 return, on which he erroneously claimed single filing status, constitutes a "separate return" within the meaning of section 6013(b)(1) and consequently (2) that the section 6013(b)(2) limitations apply to prevent Mr. Camara from making the section 6013(b) election to switch to a joint return. The two limitations that respondent invokes are found in subparagraphs (A) and (B) of section 6013(b)(2). Subparagraph (A) bars the section 6013(b) election after three years from the filing deadline (without extensions) for filing the return for that year. Subparagraph (B) bars the section 6013(b) election "after there has been mailed to either spouse, with respect to such taxable year, a notice of deficiency * * *, if the spouse, as to such notice, files a petition with the Tax Court within * * * [90 days]".[8] Respondent argues that these two limitations are satisfied because: (1) the date on which Mr. Camara and Ms. Jatta filed a joint return--May 27, 2016--was more than three years after Mr.

---

[8]The other two exceptions relate to situations in which either spouse has (1) commenced a refund suit for the taxable year, sec. 6013(b)(2)(C); or (2) has entered into a closing agreement under sec. 7121 or compromised under sec. 7122 a civil or criminal case, sec. 6013(b)(2)(D). Respondent does not contend that either of these exceptions applies in this case.

Camara "filed a separate return"[9] and (2) Mr. Camara "received a notice of deficiency, and filed a petition with the Tax Court before filing a joint return".[10]

## C. Legal Background

The issue respondent raises has not been formally addressed by this Court in a reported or reviewed Opinion. Some Memorandum Opinions of this Court have interpreted "separate return" to include a single return or a head of household return for this purpose. See Ibrahim v. Commissioner, T.C. Memo. 2014-8, rev'd and remanded, 788 F.3d 834 (8th Cir. 2015); Swonder v. Commissioner, T.C. Memo. 1994-430; Currie v. Commissioner, T.C. Memo. 1986-71; Blumenthal v. Commissioner, T.C. Memo. 1983-737; Saniewski v. Commissioner, T.C. Memo. 1979-337; Bryant v. Commissioner, T.C. Memo. 1970-265. For the most part these Memorandum Opinions merely accept the rationale of earlier cases, and the ultimate authority for these Memorandum Opinions appears to be traceable to

---

[9]Respondent's argument seems to conflate, as the operative date under sec. 6013(b)(2)(A), the filing date of a separate return with the filing deadline. As it happens, the two dates are the same in this case, and so this distinction makes little difference to our analysis.

[10]Respondent's argument also seems to conflate, as the operative event under sec. 6013(b)(2)(B), the receipt of a notice of deficiency with the mailing of a notice of deficiency. But again the distinction makes little difference in this case.

earlier cases where the effect of an erroneous claim of filing status was neither addressed nor even presented as an issue.[11]

---

[11]For instance, <u>Swonder v. Commissioner</u>, T.C. Memo. 1994-430, relies on <u>Currie v. Commissioner</u>, T.C. Memo. 1986-71, quoting it for the proposition that "a married taxpayer who has not filed a joint return before a notice of deficiency was issued to that taxpayer cannot elect to file a joint return if that taxpayer timely petitions the Court" (which, incidentally, is no longer true after <u>Phillips v. Commissioner</u>, 86 T.C. 433, 439 (1986), <u>aff'd</u>, 851 F.2d 1492 (D.C. Cir. 1988)).

<u>Currie</u>, in turn, cites as authority only <u>Jacobson v. Commissioner</u>, 73 T.C. 610 (1979), and <u>Druker v. Commissioner</u>, 77 T.C. 867 (1981), <u>aff'd in part and rev'd in part on another issue</u>, 697 F.2d 46 (2d Cir. 1982). But <u>Jacobson v. Commissioner</u>, 73 T.C. at 612, simply finds as a fact that the taxpayer, who was married, filed a "separate return" without any indication or analysis of whether the taxpayer had properly elected a status of married filing separately or had improperly sought to file as a single taxpayer. And in <u>Druker v. Commissioner</u>, 77 T.C. at 868, both taxpayers had filed returns claiming married filing separately status, so <u>Druker</u> likewise does not compel the conclusion that a mistaken single or head of household return is a separate return for purposes of sec. 6013(b).

Another example: <u>Bryant v. Commissioner</u>, T.C. Memo. 1970-265, which treats a head of household return filed by a married taxpayer as a "separate" return under sec. 6013(b)(2), cites as authority only <u>Kirby v. Commissioner</u>, 35 T.C. 306 (1960). But Mr. Kirby cannot have made an erroneous attempt to elect filing status: <u>Kirby</u> was decided before the tax rates for single and married filing separate taxpayers diverged, <u>see</u> <u>infra</u> p. 22, and even before the IRS provided taxpayers with a way to indicate single status on the return. Check boxes titled "Single", "Unmarried 'Head of Household'", "Surviving widow or widower with dependent child", "Married filing joint return", and "Married filing separate return" were added and grouped together for the first time on the 1961 Form 1040, U.S. Individual Income Tax Return. <u>Kirby</u> mentions no claim to head of household status. Consequently, <u>Kirby</u> did not consider or address the effect of erroneously filing a single or head of household return.

The most recent of the Memorandum Opinions in question, Ibrahim v. Commissioner, T.C. Memo. 2014-8, was reversed in 2015 by the Court of Appeals for the Eighth Circuit (with a dissent). Ibrahim v. Commissioner, 788 F.3d 834. And the Court of Appeals for the Fifth Circuit long ago held that a single return is not a "separate" return for purposes of section 6013(b). Glaze v. United States, 641 F.2d 339 (5th Cir. Unit B Apr. 1981), aff'g 45 A.F.T.R.2d (RIA) 80-740 (N.D. Ga. 1979). That decision is also binding in the Eleventh Circuit. See Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981).[12]

Absent a stipulation to the contrary, this case is appealable to the Court of Appeals for the Sixth Circuit. See sec. 7482(b)(1)(A), (2). We "follow a Court of Appeals decision which is squarely in point where appeal from our decision lies to that Court of Appeals and to that court alone". Golsen v. Commissioner, 54 T.C. 742, 757 (1970), aff'd, 445 F.2d 985 (1971). Respondent argues that Morgan v. Commissioner, 807 F.2d 81 (6th Cir. 1986), aff'g T.C. Memo. 1984-384, compels decision in his favor under Golsen. We disagree.

---

[12]The appellate decisions in Ibrahim v. Commissioner, 788 F.3d 834 (8th Cir. 2015), rev'g and remanding T.C. Memo. 2014-8, and Glaze v. United States, 641 F.2d 339 (5th Cir. Unit B Apr. 1981), aff'g 45 A.F.T.R.2d (RIA) 80-740 (N.D. Ga. 1979), are discussed in more detail below.

Morgan involved married taxpayers who filed "protest returns" claiming married filing jointly status for some years and married filing separately status for other years. Affirming the Tax Court, the Court of Appeals for the Sixth Circuit in Morgan held that section 6013(b)(2) precluded the husband from claiming the benefits of joint return filing status after the Commissioner issued a notice of deficiency calculating his tax on the basis of married filing separately. Morgan does not squarely address the issue presented in the case before us: Morgan does not explain the effect under section 6013(b) of a married taxpayer's initial filings of a return erroneously claiming single status. Nor does Morgan even implicitly disagree with the result in Glaze, which does squarely address the issue before us. Rather, the Court of Appeals in Morgan distinguished Glaze on the grounds that "Glaze involved no 'protest return' and the taxpayer had not attempted to file a return as a married taxpayer originally." Morgan v. Commissioner, 807 F.2d at 87.

Mr. Camara's case is distinguishable from Morgan on the same grounds on which Glaze was distinguished in Morgan. Mr. Camara neither filed a protest return nor attempted to file a return as a married taxpayer originally. We have found no other Sixth Circuit cases addressing this issue.

Because the Court of Appeals for the Sixth Circuit has not decided the precise issue before us, and in the light of the recent reversal of this Court's Memorandum Opinion in Ibrahim v. Commissioner, T.C. Memo. 2014-8, and the longstanding position of the Court of Appeals for the Fifth Circuit in Glaze, which is consistent with that of the Court of Appeals for the Sixth Circuit, we reexamine this Court's holdings with respect to this issue. Although mindful of the virtue of adhering to this Court's long-established judicial holdings, we believe that the importance of reaching the right result and of promoting uniformity in the tax law requires that we carefully reexamine the issue before us. Cf. Analog Devices, Inc., & Subs. v. Commissioner, 147 T.C. ___, ___ (slip op. at 27-28) (Nov. 22, 2016) ("On balance, we conclude that the importance of reaching the right result in this case outweighs the importance of following our precedent.").

D. Analysis

The term "separate return" in section 6013(b)(1) is not defined in the Code or the regulations. Considering the context of section 6013(b) as a whole, however, and giving due regard to the Courts of Appeals' opinions in Ibrahim and Glaze, we think "separate return" means a return on which a married taxpayer has claimed the permissible status of married filing separately, rather than a return on

which a married taxpayer has claimed a filing status not properly available to him or her.

We reach this conclusion for two related reasons. First, section 6013(b)(1) describes filing a separate return as an "election", and we agree with the Courts of Appeals in Ibrahim and Glaze that filing a return with an erroneous claim to an impermissible filing status does not constitute an "election" for this purpose. And second, the legislative history shows that section 6013(b)(1) was intended only to provide taxpayers flexibility in switching from a proper (though perhaps improvident) initial election to file a separate return to an election to file a joint return; it was not intended to foreclose correction of an erroneous initial return.

1. Statutory Description as an "Election"

No Court of Appeals has held that a single return or a head of household return is a separate return for the purposes of section 6013(b), and the two Courts of Appeals that have considered this issue have held the opposite. Ibrahim v. Commissioner, 788 F.3d 834; Glaze, 641 F.2d 339.[13]

In Glaze the issue was whether a taxpayer who had originally filed a single return was subject to the limitations of section 6013(b)(2). Mr. Currie, the

---

[13]As noted, Glaze is also binding in the Court of Appeals for the Eleventh Circuit. See Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981).

taxpayer, died intestate early in 1971. Glaze, 641 F.2d at 340. Ms. Barrow (who filed a single return for 1970) claimed to be Mr. Currie's common law wife and challenged the estate on that basis. Glaze, 45 A.F.T.R.2d (RIA) 80-740. While Ms. Barrow's challenge was being adjudicated, Mr. Glaze, the administrator of Mr. Currie's estate, filed a 1970 income tax return for Mr. Currie that designated Mr. Currie as single (reflecting the position of the estate). Id. Late in 1974 a jury decided that Mr. Currie and Ms. Barrow were married at the time of his death. Id. Mr. Glaze and Ms. Barrow then attempted to make a joint return for 1970 for Mr. Currie and Ms. Barrow, but the Commissioner denied the accompanying request for refund on the basis that the joint return was untimely under section 6013(b)(2)(B). Id.

In holding that the limitations of section 6013(b)(2)(B) did not apply, the Court of Appeals emphasized throughout its opinion that section 6013(b) describes the filing of a separate return as an election. Glaze, 641 F.2d at 340-344, 342 n.4 ("The statute actually embodies two elections, an initial election to file separate returns and a subsequent election to file a joint return."); see also sec. 6013(b)(1) (referencing "the election to file a separate return"). Noting that section 6013(b) "was enacted as a matter of legislative grace to permit married taxpayers to escape the adverse financial consequences resulting from an

injudicious election to initially file separate returns rather than a single joint return", the Court of Appeals for the Fifth Circuit held that section 6013(b) applies only if there was "a previous election by a married person to [f]ile a separate return". Glaze, 641 F.2d at 342. The Court of Appeals went on to hold that section 6013(b) does not apply unless the taxpayer has previously filed a "married filing separate[ly]" return:

> Use of the word "separate" can only be deemed to refer to the filing status of "married, filing separately." The term "election" embodies the notion of choice. A reading of [s]ection 6013(b)(1) and [s]ection 6013(b)(2) leads to only one inference, i.e., the section is applicable only to the situation where a married taxpayer has made an election to file a separate (not "single") return and later decides that he/she wants to revoke that choice.

> In the instant case, there was never any election until the filing of the joint return on December 17, 1974. The decedent had never made a previous election to file a separate return. He had, by his administrator, filed a "single" return. This is an entirely distinct category from "married[] filing separately." It is clear that [s]ection 6013 was never intended to cover situations such as the one presented here where a taxpayer erroneously lists his status as single rather than married.

Id. at 342.[14]

---

[14]In dicta in Phillips v. Commissioner, 86 T.C. at 440, we characterized the holding in Glaze as "too narrow". But we did not undertake in Phillips to decide the meaning of "separate return".

In <u>Ibrahim v. Commissioner</u>, 788 F.3d 834, the issue was whether a taxpayer who had originally filed a head of household return was subject to the limitations of section 6013(b)(2). Over a dissent, the Court of Appeals for the Eighth Circuit found for the taxpayer, holding that a head of household return is not a "separate return" for the purposes of section 6013(b). <u>Id.</u>

The Court of Appeals for the Eighth Circuit concluded that "separate return" refers only to a married filing separately return because "[t]hroughout the Code, a 'separate return' is an option only for 'married individuals,' 'spouses,' or 'husband and wife.'" <u>Id.</u> at 838. Following <u>Glaze</u>, the court also concluded that because the taxpayer had not filed a married filing separately return, no "election to file a separate return" under section 6013(b)(1) had been made and therefore section 6013(b) did not apply. <u>Id.</u> at 839.

As the appellate opinions in <u>Ibrahim</u> and <u>Glaze</u> observe, section 6013(b)(1) describes filing a separate return as an "election". And as <u>Glaze</u>, 641 F.2d at 342, notes, "[t]he term 'election' embodies the notion of choice." We think that there is no valid "choice" embodied in a return on which the taxpayer has erroneously indicated a filing status that is not legally available to him or her. Consequently, we think that the use of the word "election" in the statute strongly supports the conclusion that an erroneous single return is not a "separate return".

We find further support for this conclusion in cases involving elections in other contexts, such as net operating losses, depreciation method, and the installment method of accounting.  In those contexts, we have sometimes reasoned that an attempted erroneous position on a return is not an election at all, and we have consistently distinguished attempted elections of an invalid method from proper but possibly improvident elections.[15]

---

[15]See Plumb v. Commissioner, 97 T.C. 632, 640-641 (1991) (involving the election to waive the carryback period for net operating losses) ("Several courts, including * * * [the Tax Court], have held in various other contexts that a taxpayer who attempts to make an election that is not legally available to him will be treated as having made no election, and accordingly may be allowed to make another election as though the original election had not been made." (citing Mamula v. Commissioner, 346 F.2d 1016 (9th Cir. 1965), rev'g 41 T.C. 572 (1964), and Silver Queen Motel v. Commissioner, 55 T.C. 1101 (1971) (involving election of depreciation method))); Gibson v. Commissioner, 89 T.C. 1177, 1184-1192 (1987) (describing the Tax Court's jurisprudence regarding election of the installment method); Wierschem v. Commissioner, 82 T.C. 718, 723 (1984) ("These cases have allowed a taxpayer to elect the installment method subsequent to filing his tax return for the year of sale when the taxpayer's original choice of reporting income from the sale is an impermissible method."); see also Mamula v. Commissioner, 346 F.2d at 1018-1019 ("[T]he taxpayer could not be bound by his election for it was a nonallowable choice--it was not allowable and not allowed. No one was bound.  We are not here concerned with a taxpayer who uses hindsight to learn that the method he had chosen, though proper, was not the most advantageous to him.  We are rather concerned with an instance where the method chosen by the taxpayer is advanced in good faith, and later conceded to have been improper.").

2. Legislative History

The legislative history shows that the provision now codified as section 6013(b) was originally intended to alleviate a problem arising from a perceived lack of authority for a married taxpayer to change a permissible and otherwise irrevocable election as to his or her filing status.

Congress first allowed married taxpayers to make joint returns in 1918. Revenue Act of 1918, ch. 18, sec. 223, 40 Stat. at 1074 ("If a husband and wife living together have an aggregate net income of $2,000 or over, each shall make * * * [an individual] return unless the income of each is included in a single joint return."). But before 1948 there was little benefit to making a joint return (aside from the possible convenience of doing so) because the same progressive rate schedule applied to all returns, whether individual or joint.[16] Boris I. Bittker & Lawrence Lokken, Federal Taxation of Income, Estates, and Gifts, paras. 2.3 and 111.5.2 (Westlaw 2017). Consequently, before 1948 if married taxpayers each

_____

[16]One benefit--and as far as we can tell, the only benefit--of filing a joint return instead of two separate returns between 1918 and 1948 was that the married couple could potentially claim certain dependents that neither spouse could claim on his or her own. See Barbetti v. Commissioner, 9 T.C. 1097 (1947) (finding that in the absence of a joint return, a taxpayer who had provided more than half the support for his stepdaughter-in-law and stepgrandson was not entitled to claim them as dependents).

had taxable income, it was often better (and rarely detrimental) for each spouse to file a return to get the benefit of a lower effective rate.

In several cases decided by the Board of Tax Appeals in the 1920s and 1930s, taxpayers who had originally filed a joint return sought to replace their joint return with two individual returns to achieve a lower effective rate by splitting their respective incomes across two returns. Starting with Downes v. Commissioner, 5 B.T.A. 1029 (1927), the Board of Tax Appeals consistently held that the original filing of a valid joint return was an irrevocable election. E.g., Torland v. Commissioner, 11 B.T.A. 35 (1928); Buttolph v. Commissioner, 7 B.T.A. 310 (1927), aff'd, 29 F.2d 695 (7th Cir. 1928); Cassiere v. Commissioner, 5 B.T.A. 1032 (1927). The Board reasoned:

> Neither the Commissioner nor taxpayers * * * may change or alter a return that is correct and proper. It may be changed in order to make it correct and in compliance with the statute, but not otherwise. In this case, as we have said before, the return filed was on a correct basis. Where so filed it may not be changed and another return filed on another basis although equally correct.
>
> *        *        *        *        *        *        *
>
> [T]he husband had the right to file a joint return which included all the income of both himself and wife. When he does so the statute provides that the tax shall be computed on that basis. While taxpayers are given the right to determine on which basis, as between joint returns and separate returns, the tax shall be computed as determined by the manner in which the income is reported, it does not

give them the right to change such basis after the tax liability becomes fixed and is determined on the basis on which the income is reported.

Downes v. Commissioner, 5 B.T.A. at 1031-1032.

In Poe v. Seaborn, 282 U.S. 101 (1930), the Supreme Court held that a married couple residing in a community property State is required to divide community income equally between the two spouses for Federal income tax purposes. See generally Bittker & Lokken, supra, para. 111.5.2. This development made filing individual returns in community property States even more advantageous than it had been before Seaborn, and it also meant that similarly situated married couples often received a markedly different tax result depending on whether they were residents of a common law State or a community property State.

In 1948 Congress reacted by extending the Seaborn result to married couples residing in common law States. The Revenue Act of 1948, Pub. L. No. 80-471, ch. 168, sec. 301, 62 Stat. at 114, provided: "In the case of a joint return * * * the combined normal tax and surtax * * * shall be twice the combined normal tax and surtax that would be determined if the net income * * * were

reduced by one-half."[17] But this change caused some confusion: Whereas before 1948 it had often produced a better result (and almost never a worse result) to file two individual returns separately, after 1948 it was often more beneficial for married taxpayers to make a joint return. Because the election to file separately was considered irrevocable under the Board of Tax Appeals' interpretation, taxpayers who initially filed separately (perhaps as they had been doing for many years) were unable to change their election to take advantage of the new benefits associated with a joint return. See Barbetti v. Commissioner, 9 T.C. 1097, 1098 (1947) ("[W]e have no authority to allow * * * [the taxpayer] to substitute joint returns for his separate returns."); see also Ladden v. Commissioner, 38 T.C. 530, 534 (1962).

In 1951 Congress provided relief by adding section 51(g) to the 1939 Code, which subsequently became section 6013(b) of the 1954 and current Codes. Revenue Act of 1951, ch. 521, sec. 312, 65 Stat. at 488. Like current section 6013(b)(1), section 51(g) of the 1939 Code applied only "[i]f an individual has filed a separate return". The Senate Finance Committee report reflected the Board of Tax Appeals' and the Tax Court's prior holdings that the election by married

---

[17]In actuality this change was even more favorable than the result in Poe v. Seaborn, 282 U.S. 101 (1930), because it effectively allowed a married couple to split all their collective income, rather than just community income.

taxpayers to file separately and the election to make a joint return, once made, are irrevocable. S. Rept. No. 82-781 (1951), 1951-2 C.B. 458, 492 ("Under section 51 of the Code, married taxpayers may file either separate returns or a single joint return. The election, once made, as to which type of return to file is binding with respect to the taxable year for which the return is filed."). The Finance Committee's report also noted why relief was warranted: "As a proper election frequently requires informed tax knowledge not possessed by the average person, the binding elections referred to above may result in substantially excessive taxes." Id.

The addition of section 51(g) to the 1939 Code did not create any difference between the treatment of unmarried taxpayers (other than heads of household)[18] and married taxpayers who filed separately. The same progressive rate schedule continued to apply to both. But the new and favorable treatment of married couples making joint returns after 1948 was criticized because it provided a benefit to married persons that was not similarly afforded to single persons; that is, the tax benefit to married couples making joint returns was "viewed by many as a

_____

[18]Congress provided new tax treatment for heads of household in the same act that added sec. 51(g) to the 1939 Code. Revenue Act of 1951, ch. 521, sec. 301, 65 Stat. at 480. Additionally, Congress afforded special treatment to surviving spouses in 1954. See I.R.C. 1954, ch. 1, sec. 2, 68A Stat. at 8.

tax penalty on single persons".  Bittker & Lokken, supra, para. 111.5.5.  In response Congress enacted a new rate schedule in 1969 applicable to single individuals (other than surviving spouses and heads of households) but did not apply the new rate schedule to married taxpayers filing separately.  Tax Reform Act of 1969 (TRA), Pub. L. No. 91-172, sec. 803(c), 83 Stat. at 681.  This was the first time that tax rates diverged for single individuals and married individuals filing separately.

In sum, as the variety of filing statuses has multiplied (and as the Commissioner's administration of those filing statuses has evolved to accommodate that multiplication), the wording of section 6013(b)(1) has remained unchanged in relevant part; since 1951 the statute has applied "if an individual has filed a separate return".  The application of this unchanged statutory provision in the context of an evolving system of rate schedules and filing statuses has led to the problem we face today.

It is clear from the legislative history discussed above that section 6013(b) was added to the Code to alleviate a problem arising from the lack of authority to change a correct election, which was viewed as being irrevocable or "binding".  S. Rept. No. 82-781, supra, 1951-2 C.B. at 492.  In 1927--long before enactment of the predecessor of section 6013(b) in 1951--this Court observed:  "Neither the

Commissioner nor taxpayers * * * may change or alter a return that is correct and proper. It may be changed in order to make it correct and in compliance with the statute, but not otherwise." Downes v. Commissioner, 5 B.T.A. at 1031. Section 6013(b) changed the first part of this proposition--it allowed a married taxpayer to alter a return that correctly and properly reflected a filing status other than married filing jointly. But there is nothing to suggest that section 6013(b) was intended to prevent a married taxpayer who had filed an incorrect return from altering the return so as to make it correct and in compliance with the Code.[19] That is all Mr. Camara seeks to do in this case.

When a taxpayer makes an incorrect initial election as to filing status, redetermining that taxpayer's correct tax liability requires a determination as to filing status. That determination differs little (if at all) from any other determination the taxpayer may seek to contest through deficiency procedures. In any deficiency proceeding our task is to review the Commissioner's determination to ensure that the taxpayer pays the correct amount of tax. See sec. 6213(a). The interpretation of section 6013(b) that we adopt today allows for "appropriate

---

[19]In fact, before 1951 a married taxpayer who did not elect married filing jointly status could scarcely make an error in electing any other filing status, since there was no difference in filing status or rate schedules for unmarried taxpayers filing single returns and for married taxpayers filings separately and since head of household status had not yet come into existence.

preassessment Court review of all issues generated by respondent's determination", Millsap v. Commissioner, 91 T.C. at 937, without interfering with the legislative purpose of section 6013(b).  As we said in Millsap:  "To treat the issue of a taxpayer's filing status any differently than the issues involving deductions or income items would be arbitrary and without reason.  A taxpayer is no less entitled to question respondent's determination of filing status than any other determination."  Id.

And in fact--although this consideration does not determine the meaning of the statute or dictate the result of this case--we note that the notice of deficiency that respondent sent Mr. Camara indicated that he could challenge "the determination" by filing a petition with the Tax Court.  The notice does not explain, however, that, in respondent's view, petitioning this Court would effectively foreclose any challenge to respondent's determination of Mr. Camara's filing status.  To sustain respondent's position could, we think, help spring a trap for the unwary.

E.  Respondent's Additional Arguments

Respondent argues that his interpretation "is supported by the fact that Congress enacted the predecessor statute to section 6013(b) in 1951 but did not establish a separate rate structure for married taxpayers filing separately until

1969." But respondent's premise is incorrect. As discussed, Congress enacted a new rate structure for <u>single</u> individuals in 1969, but the rates for married individuals filing separately remained unchanged. TRA sec. 803(c).

Respondent also contends (1) that in 1951 the election to file a separate return was made simply by filing any individual return by oneself, and therefore (2) that filing an individual return by oneself effects the same election today. But even if respondent is correct about the manner in which the election was administered in 1951, that historical administrative treatment does not determine the statute's meaning. And respondent's argument assumes its own conclusion; it assumes that "separate return" means "any non-joint individual return"--but this is precisely the question before us.

Respondent also advances various policy arguments against the result we reach today. Respondent points to section 6013(b)(3), which provides that a joint return "made under this subsection" is generally deemed filed on the last day for filing. Respondent posits that our holding, in conjunction with section 6013(b)(3), might in some manner allow a crafty taxpayer to improperly game the statute of limitations. But in the light of our conclusion that section 6013(b) does not apply in this case, the provision of section 6013(b)(3) which concerns respondent is also inapplicable.

Respondent also argues that because the Commissioner is generally not permitted to send another notice of deficiency to a taxpayer if the taxpayer has filed a petition with this Court, sec. 6212(c)(1), a taxpayer should also be precluded from "filing a joint return" once he or she has filed a petition. But other than his vague argument that there is some relationship between sending a notice of deficiency and making a joint return, respondent does not contend that there is any impediment--other than the section 6013(b)(2) limitation, which we hold is inapplicable--to giving a taxpayer such as Mr. Camara the benefit of joint filing status and tax rates. Consequently, respondent's argument fails.

Respondent also believes that our holding will allow taxpayers to evade other irrevocable elections they made on their original return. Respondent argues that if section 6013(b) does not apply, our holding would "pave the way for arguing that there is likewise a gap in * * * [s]ection 6013(b)(1) that requires the individual's previous elections to carry over and bind him on the joint return as well." But this case does not present any such issue, and we decline to decide any issue not properly before us.

Finally, respondent suggests that our holding will somehow upset or conflict with refund jurisdiction procedures or closing agreements under section 7121. Respondent's arguments appear to be premised on a mistaken belief that, if

section 6013(b) does not apply, section 6013(a) would allow a taxpayer to set aside a closing agreement or decision in a refund suit. We can see no reason why this would be so.

F. Conclusion

We hold that the 2012 return that Mr. Camara originally filed, erroneously claiming "single" status, did not constitute a "separate return" for the purposes of section 6013(b). Consequently, section 6013(b), including the limitations of section 6013(b)(2), is inapplicable. Respondent does not dispute that, if section 6013(b) does not apply, then under the general rule of section 6013(a) Mr. Camara is entitled to joint tax rates and filing status for 2012 on the basis of the joint return that petitioners have filed. Accordingly we hold for Mr. Camara on this issue.

To reflect the foregoing and the parties' concessions,

Decision will be entered

under Rule 155.

Reviewed by the Court.

MARVEL, FOLEY, VASQUEZ, GALE, GOEKE, HOLMES, GUSTAFSON, PARIS, MORRISON, KERRIGAN, BUCH, LAUBER, NEGA, PUGH, and ASHFORD, JJ., agree with this opinion of the Court.